In re Wilbur Delmar WARNER,
Bankrupt.

Wilbur Delmar WARNER, Plaintiff,

v.

Donna WARNER, Defendant.

In re Harvey Lynn LONG, Bankrupt.

Connie Rae LONG, Plaintiff,

v.

Harvey Lynn LONG, Defendant.

Bankruptcy Nos. B–78–00046, 79–01597.
Civ. Proceeding No. 80–0024.

United States Bankruptcy Court,
D. Utah, C. D.

Aug. 7, 1980.

Rulon R. Price, Salt Lake City, Utah, for plaintiff, Wilbur Delmar Warner.

Brian M. Barnard, Salt Lake City, Utah, for defendant, Donna Warner, in No. 79–00046.

James R. Brown, Salt Lake City, Utah, for plaintiff, Connie Rae Long.

George H. Searle, Salt Lake City, Utah, for defendant, Harvey Lynn Long, in No. 80–0024.

## MEMORANDUM DECISION AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

The case of *Warner v. Warner*, governed by the former Bankruptcy Act, comes before the Court on a motion to dismiss brought by the defendant, Donna Warner, the former spouse of the bankrupt. The diverse issues raised in support of Donna Warner's motion to dismiss include issues common to the case of *Long v. Long* which arises under the present Bankruptcy Code. In the interest of justice and of judicial economy, the parties in *Long* were given opportunity to brief these common issues and these proceedings were consolidated. The issues of mutual concern are: First, the contractual or collateral estoppel effect a divorce decree and attendant proceedings should be given in determining whether a debt sued upon is "alimony, maintenance or support" under section 17a(7) of the Bankruptcy Act, former 11 U.S.C. § 35a(7), and under 11 U.S.C. § 523(a)(5) of the Bankruptcy Code. In other words, to what extent should this Court entertain extrinsic evidence of the nature of a debt fixed by a decree of divorce? Second, the date to which the Court should refer in determining whether the debt sued upon is "alimony, maintenance or support." In other words, should the Court consider evidence of the parties' relative financial circumstances since the entry of the decree of divorce?

Other significant issues, relevant only to the *Warner* proceeding, are also resolved in this memorandum decision.

### The Facts

The relevant facts of the *Long* case are simple. On June 7, 1978, a decree of divorce was entered dissolving the marriage of Harvey and Connie Long. By terms of the divorce decree, the debtor, Harvey Long, was required to pay all of the obligations incurred by the parties prior to the divorce, excluding only the first mortgage payments on the house, and to hold Connie Long harmless from those debts. Harvey Long has since failed to pay several of these obligations, including amounts due on a second mortgage on the couple's home, incurred by him to help meet the obligations imposed by the divorce decree. Plaintiff, Connie Long, has paid some of these overdue obligations and seeks a determination that the debts imposed on Harvey Long in the divorce decree are nondischargeable as alimony, maintenance, and support under 11 U.S.C. § 523(a)(5). She desires, as well, a setoff of the debts she has paid against the equity awarded to the debtor in their home.

The facts of the *Warner* case are more complex. The complaint was filed by the bankrupt, Wilbur Warner, in accordance with section 17(c)(1) of the Bankruptcy Act, former 11 U.S.C. § 35(c)(1), for a determination of the dischargeability of specific debts imposed on the bankrupt by a state court as the result of a divorce decree. The defendant, Donna Warner, then filed a motion to dismiss for failure to state a claim upon which relief could be granted.

The facts of this case show that during 1977, Donna Warner commenced an action in the District Court of Salt Lake County, Utah, to obtain a divorce from the plaintiff, Wilbur Warner. On January 17, 1978, Wilbur Warner filed with this Court a voluntary petition in bankruptcy. Donna Warner was aware of the petition and chose not to file jointly with her husband. Wilbur Warner was discharged in bankruptcy on May 1, 1978.

In furtherance of the divorce action, on March 30, 1978, both parties met in the Utah district court in a pre-trial settlement hearing. The parties stipulated in pertinent part that Donna Warner waived any and all rights she may have to receive alimony from her husband. Moreover, Wilbur Warner was to pay all of the marital debts with the exception of a furniture bill.

On May 19, 1978, following Wilbur Warner's discharge in bankruptcy, the state court approved the stipulations of the pre-trial hearing and allowed Wilbur Warner to withdraw his answer to the amended divorce complaint. The court then entered a default judgment for Donna Warner.

The marital debts which Wilbur Warner agreed to pay were listed on his schedule of creditors and discharged by this Court. At issue is whether Wilbur Warner is legally liable for debts imposed by a divorce decree in state court when such debts have been previously discharged in this Court.

### Notice and Reaffirmation in Warner

Donna Warner argues first that Wilbur Warner is legally obligated to pay the debts because she was not listed as a creditor on his schedules and, therefore, the obligation of her former husband to her is not discharged. Second, Donna Warner argues that Wilbur Warner's express acceptance of the stipulations of the pre-trial hearing and of the divorce decree in state court were new promises by him to pay the discharged debts. Finally, Donna Warner contends that these debts assigned to Wilbur Warner by the district court were in the form of support and therefore under Section 17a(7) of the Bankruptcy Act, former 11 U.S.C. § 35a(7), the debts were nondischargeable. As only this third contention involves common legal issues with the *Long* proceeding, and as resolution of this contention is not logically required in the *Warner* case until after resolution of Donna Warner's other two grounds for dismissal, the Court addresses first the issues peculiar to *Warner*.

■ It is an accepted principle of bankruptcy law that the claims of all creditors should be listed by the debtor, even those debts that are disputed, contingent, or unliquidated. *See* 1 *Collier Bankruptcy Manual* ¶ 7.04 (1978). Section 17a(3), former 11 U.S.C. § 35a(3), states, however, that even though a creditor's claim is not duly scheduled, it will be discharged if the creditor had "notice or actual knowledge" of the proceeding in bankruptcy.

■ At the time Wilbur Warner filed his petition in bankruptcy, Donna Warner had already commenced a divorce action against him in state court. The record before this Court does not disclose the extent of Donna Warner's claim in her original complaint for divorce. That Donna Warner may have been a creditor with a disputed or unliquidated claim is, however, not pertinent to this action. The statements in the uncontroverted affidavit of the bankrupt's attorney show that Donna Warner did have knowledge of the petition. Therefore, her claim that her debt was not discharged because Wilbur Warner failed to list it on his schedules is without substance.

■ Generally, under state law applicable to the former Bankruptcy Act, a promise made by a bankrupt, after discharge in bankruptcy, to pay his creditors a balance left unpaid by the distribution of assets in the bankruptcy proceedings is an enforceable promise. *Zavelo v. Reeves*, 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676 (1913). *Corbin on Contracts* ¶ 222 (1963). This Court agrees with Donna Warner's contention that the stipulation by Wilbur Warner to pay certain marital debts did in fact constitute a promise by the plaintiff to the defendant to pay the debts. This Court cannot agree, however, that this promise to

the bankrupt's spouse revived the obligations in question.

The debts at issue are specific debts that Donna and Wilbur Warner incurred jointly. As to those debts, Donna Warner was a co-debtor with Wilbur Warner, not his creditor. Hence, Wilbur Warner's promise to pay the debts was not made to the creditors but to the co-principal on the debts. Under applicable state law, a promise made by a bankrupt to his co-debtor creates a different legal effect from a promise made by a bankrupt to his creditor.

Concerning a promise made by a discharged bankrupt, the Restatement (Second) of Contracts § 92 (1973) says: "The new promise referred to in Section 86–89 is not binding unless it is made to the person who is an obligee of the antecedent duty."

The standard adopted in the Restatement (Second) of Contracts reflects changes in contract doctrine that have occurred since the adoption of the original Restatement, and this present interpretation is supported by a similar statement in 9 Am.Jur.2d *Bankruptcy* § 287 (1968):

> Originally the new promise will have been made to the creditor himself but it may be effective to revive a debt discharged in bankruptcy if made to the creditor's attorney or other agent. A statement to a third person having no interest or agency is generally held insufficient for such purpose, as being a mere declaration of intention.

Moreover a similar statement is made in 86 C.J.S. *Bankruptcy* § 583, at 179 (1963):

> Liability on a debt discharged in bankruptcy is not revived or a new enforceable obligation to pay the debts created unless there is an express promise or undertaking to pay the specific debt made to the creditor or his agent.

Thus, in accordance with applicable authority under the Bankruptcy Act, Wilbur Warner is not legally obligated to pay creditors by virtue of his promise to Donna Warner in the divorce decree. He may, however, be legally obligated to hold his former wife harmless on these debts, presumably by paying the creditors, if payment of the debts constitutes "alimony, maintenance or support."

### Alimony, Maintenance and Support

The issues involved in determining what is alimony, maintenance or support for purposes of dischargeability in bankruptcy are of common concern to both the *Warner* and *Long* proceedings. Under section 17a(7) of the Bankruptcy Act, former 11 U.S.C. § 35a(7), which controls in *Warner*, debts which are "for alimony due or to become due, or for the maintenance or support of such spouse or child" are excepted from a discharge in bankruptcy. Likewise, 11 U.S.C. § 523(a)(5) of the Bankruptcy Code, which controls in *Long*, excepts from discharge debts due "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement."

In the *Warner* case, Donna Warner waived all rights she may have had to receive alimony from the bankrupt, Wilbur Warner. However, the district court ordered Wilbur Warner to pay certain of the marital debts "for the support of the plaintiff (Donna Warner)" and to hold her harmless thereon.

The divorce decree in the *Long* case orders Harvey Long to "assume and pay all debts and obligations incurred by the parties prior to the filing of this action, holding plaintiff (Connie Long) harmless therefrom," excepting only the future first mortgage payments on the couple's house. Child support was set at $150 per month, and alimony was awarded in the sum of $1 per year. Harvey Long was further ordered to pay to Connie Long the sum of $350 for attorney's fees and costs.

An order in a divorce decree to pay community debts may be either in the nature of alimony or support, not dischargeable in bankruptcy, or in the nature of a property settlement which is dischargeable under both present and former bankruptcy

laws. Specifically agreements to hold one's spouse harmless on joint debts, such as the ones involved in these proceedings, can fall into either category. A comment in the House Report on 11 U.S.C. § 523(a)(5) affirms this proposition which applies with equal accuracy to the former law:

> This provision will, however, make non-dischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse . . . . H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

█ Although cases decided under the repealed Bankruptcy Act can be found to the contrary,[1] since the decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), it has been settled that what constitutes alimony, maintenance and support for purposes of nondischargeability is a matter of federal law. Although *Brown* involved the dischargeability of debts under sections 17a(2) and (4), and the present proceedings involve dischargeability of debts under section 17a(7) of the Bankruptcy Act and under section 523(a)(5) of the Bankruptcy Code, the principles expressed in *Brown* apply with equal force to these proceedings. The Court in *Brown* declared, "By express terms of the Constitution, Bankruptcy law is federal law, U.S. Const., Art. 1, § 8, cl. 4 . . . . ." *Brown v. Felsen, supra* at 136, 99 S.Ct. at 2212.

The legislative history of the Bankruptcy Code directly applicable to the *Long* proceeding and relevant by analogy to the *Warner* proceeding, reiterates the Supreme Court's view in the *Brown* case. The legislative history of Section 523 notes: "What constitutes alimony, maintenance, or support, will be determined under bankruptcy laws, not state law." H.R.Rep. No. 95–595, *supra* at 364, U.S.Code Cong. & Admin. News 1978 at 6320. The House Report further states that cases such as *In re Waller, supra*, decided to the contrary, are overruled. *Id.* at 364. This continuing principle of law is aptly summarized by Judge Lee:

> In ruling on the dischargeability of a debt the bankruptcy court is not bound by state law. The bankruptcy court does not sit as another state court as in diversity cases. Rather, it sits as a federal court applying federal law. The doctrine of *Erie R.R. v. Thompkins* is not applicable.

Lee, *Case Comment*, 50 Am.Bankr.L.J. 175, 176 (1976). Thus, federal law applies in determining what is alimony, maintenance, or support for the purpose of determining the nondischargeability of the debts involved.

█ This is not to say, however, that questions concerning the underlying relationship creating an obligation of alimony, maintenance and support are not questions of state law. Those issues, which would include, for example, whether a valid marriage ever existed upon which a legal obligation of support could be based, or whether a remarriage terminates a legal obligation of support, must be decided under applicable state law, for it is to the states that such issues of domestic relationships are committed. *Cf. DeSylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956); *In re Rule*, CCH Bankruptcy Law Reporters ¶ 67,318 (8th Cir. 1980); *In re Albin*, 591 F.2d 94 (9th Cir. 1979). The bankruptcy court must first determine whether a duty of support exists between the parties under applicable state law. The court must then apply federal law to characterize the debts arising from this relationship for the purpose of determining the effect of bankruptcy upon those debts. The divorce decree will usually establish the duty of support. The role the decree should play in the federal law characterization of debts imposed by it is less clear.

█ It has long been settled that in determining whether the award is in the na-

---

1. *See, e. g., Nitz v. Nitz*, 568 F.2d 148 (10th Cir. 1977); *In re Waller*, 494 F.2d 447 (6th Cir. 1974).

ture of a property settlement or of a support obligation, the court may look behind the recitations of the divorce decree to the substance of the situation. *See, e. g., Nitz v. Nitz, supra, Erickson v. Beardall,* 20 Utah 2d 287, 437 P.2d 210 (1968); *Lyon v. Lyon,* 115 Utah 2d 466, 206 P.2d 148 (1949). Some courts have limited this inquiry to questions of whether the debt possesses the traditional characteristics of state law support obligations or corresponds closely with the state statutory definitions of support. *See Nichols v. Hensler,* 528 F.2d 304 (7th Cir. 1976); *In re Waller, supra. See also* Loiseaux, *Domestic Obligations in Bankruptcy,* 37 Journal National Assn. Ref. in Bankruptcy 68, 70 (July 1963). In light of the legislative history previously cited and the reasoning of *Brown v. Felsen, supra,* however, this reference to state law to define what constitutes support under bankruptcy law appears untenable. Rather, a second line of cases which focuses on whether the obligations imposed arose form a legal duty of support and were awarded in discharge of that duty appear more defensible. Under this reasoning, if a debt is imposed to discharge the state law duty of support, no matter what the form of the obligation, it is nondischargeable in bankruptcy. *See In re Wah Chin,* 3 B.C.D. 1363 (N.D.Cal.1978). Thus, obligations which partake of none of the traditional characteristics of support, such as being paid out over a period of time and terminable upon the spouse's death or remarriage, may still be nondischargeable debts if they are imposed to fulfill a legal obligation of support. This interpretation finds vindication in the legislative history of Section 523(a)(5) which declares that an agreement to hold a former spouse harmless from any debt can be in the nature of alimony, maintenance and support and thus nondischargeable if imposed to fulfill the obligation of support. *See* H.R.Rep. No. 95–595, *supra,* at 364. *See also infra* at 7.

■ Once an underlying legal duty of support has been established, and before the court can determine which obligations are imposed in discharge of that duty, the contractual or collateral estoppel effect of the divorce decree and attendant proceedings upon the bankruptcy proceeding must be determined. Some courts have characterized the divorce decree which is based on a marital settlement agreement as a contract whose provisions should be interpreted and applied in a nondischargeability action generally according to accepted contractual rules of construction. *See In re Wah Chin, supra,* and cases cited therein. Thus, as stated in *In re Wah Chin, supra* at 1364, "With one caveat, marital settlement agreements are interpreted in the same manner as other contracts, and this consists of ascertaining the meaning to be given the expressions of the parties." The "caveat" is then explained as a special rule of construction which presumes the obligation to be in the nature of support and thus nondischargeable. To this Court, however, contractual analysis in this arena leads to inconsistencies with other accepted practices and principles of law. The nature of the debt, that is whether it was imposed to discharge the obligation of support, cannot be determined from the "four corners" of the divorce decree and attendant settlement stipulations without impairing the federal character of the nondischargeability provisions and their underlying federal policies.

■ The bankruptcy court does not accept as determinative statements in the decree that it is just a property settlement, but rather looks at the substance of the decree to see if the obligations were in fact imposed for the support of a spouse. Neither should the court accept as determinative statements in the decree to the effect that certain debts are for spousal support without an examination of the substance of those characterizations. The bankruptcy court gives no effect to a provision in a business contract where the parties agree that a certain debt will be nondischargeable in the event of bankruptcy. The court ought not give any greater contractual effect to the recitations in the documents of divorce. To declare a debt nondischargeable without further examination solely because, as a matter of contract interpretation, the divorce decree classifies the debt as one for spousal support is, in effect, to

allow the spouses to contract that a debt will not be dischargeable in bankruptcy. The court should not presume the support nature of the obligations from the recitations in the divorce decree any more than it would presume nondischargeable fraud from a statement acknowledging such in a promissory note. In both cases, the recitations provide evidence to be considered, but are not determinative. The characterization of a debt as support for the purpose of determining its nondischargeability, like a finding of fraud for the same purpose, is a federal question governed by federal law and policy.

█ Furthermore, it cannot routinely be argued that the divorce decree, like a contract, evidences the intent of the parties in discharging support, for often the effect of the filing of bankruptcy is not in contemplation when the decree is drafted. An award or waiver of "alimony" may have been phrased for its effect on the tax liability of the parties or for some other reason unrelated to the true character of the debt. Dischargeability is not at issue until this Court's jurisdiction is invoked. Therefore, it cannot be said from that recitation that the intent of the parties was or was not to provide support for the spouse which is nondischargeable in bankruptcy. To hold the parties to the terms of a decree as one would to the terms of a contract might often ignore the true nature of the debt. In an analogous circumstance, the Court in *Brown v. Felsen, supra* 442 U.S. at 133, 99 S.Ct. at 2210, noted that it would be improper to hold a creditor to the pleadings made in state court for the purpose of determining whether his debt was nondischargeable when the effect the filing of bankruptcy would have on his debt was not in contemplation at the time of the state court litigation. Likewise, in the present circumstances, both parties ought to be able to produce extrinsic evidence to prove the underlying nature of the debt, whether it was in fact imposed to discharge the obligation of support, for the purpose of litigating its nondischargeability.

The language of the new Code supports this Court's position. 11 U.S.C. § 523 (a)(5)(B) clarifies the nondischargeability of support obligations by stating that such debts to a spouse, former spouse, or child of the debtor are excepted from discharge "but not to the extent that . . . (B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support." This statutory mandate appears specifically to direct the Court not to take the recitations in a divorce decree as binding for the purpose of characterizing the nature of the debt under bankruptcy law. This directive requires rather that the bankruptcy court examine the debt from its unique point of view to insure that the federal policy in bankruptcy of excepting support obligations from discharge is correctly executed. As pointed out by Judge Lee:

> In deciding whether a particular debt of the bankrupt qualifies as alimony, maintenance or support so as to be nondischargeable in bankruptcy the bankruptcy court is confronted with two conflicting policy considerations, that of requiring the bankrupt to fulfill obligations to his ex-wife arising out of the broken marriage contract and that of giving the bankrupt a fresh start unencumbered by the burdens of preexisting debt arising from other contracts. Obviously, neither of these competing policy considerations should override the other.

Lee, *Case Comment, supra* at 177. The kind of balancing required to enforce these competing considerations can best be made, as Congress has indicated pursuant to the broader perspective held by the bankruptcy court.

█ Although principles of contractual interpretation are inapposite, the bankruptcy court is bound to applicable rules of collateral estoppel in characterizing the obligations created by the divorce decree. Therefore, any necessary factual issue actually litigated in the former suit estops further inquiry into that issue in this Court. *See* 1B *Moore's Federal Practice* ¶ 0.441(2) *et seq.* (2d ed. 1974). If both parties appear

and the court received evidence and made a determination of what was necessary for the support of the spouse, the factual findings would be binding upon the parties. In practice, however, most divorces are obtained by default or stipulation with little actually being litigated. Even in these typical cases, however, this Court recognizes the experience held by the state courts in domestic matters. A clear award of alimony or child support, even though by default, may reflect the state court's reasoned position and be entitled to significant weight by this Court. Such clear rulings are, however, rarely litigated in bankruptcy court. It is rather in the area of hold harmless agreements that this Court is frequently called upon to determine the dischargeability of the underlying debt.

▌ In determining whether the debt in question is in the nature of support, or in other words, was imposed to discharge an obligation of support, the Court must weigh the decree, the corresponding record of the proceeding, and, where not barred by collateral estoppel, new evidence of the relative financial ability and needs of the parties. Under modern law, a duty of support between the spouses is not presumed, but is imposed based on the relative need, length of the marriage, the presence of minor children and so forth. Similar considerations must be examined by this Court in determining whether the often ill-defined basis of a hold harmless agreement was the obligation of support. The Court may consider as well the substance of the underlying debts: whether they represent property or services necessary for the maintenance of the spouse or children. By including the foregoing factual matters in its inquiry, the Court is prepared to strike an acceptable balance between the imperatives of domestic support and debtor's relief.

▌ This balance may be affected, however, by the point in time at which the Court characterizes the debt in question. Specifically, there arises a question as to whether the Court should consider evidence of the parties' relative financial circumstances since the entry of the decree of divorce.

It seems reasonable to conclude that for a debt to be nondischargeable under either Section 17a(7), former 11 U.S.C. § 35a(7), or 11 U.S.C. § 523(a)(5), payment of the debt must be reasonably necessary for the support and maintenance of spouse and children both at the time the debt was imposed in the divorce decree and at the time the discharge of the debt is attempted, or, in other words, at the time the bankruptcy petition of the debtor-spouse is filed. The Court must look initially to the origin of the debt to determine whether, at the time the debt was imposed by the state court, it was for the support and maintenance of the spouse or children or whether it was merely part of a property settlement between the spouses. If originally in the character of a property settlement, the debt is dischargeable. If, however, this Court determines that the debt was originally imposed for the support or maintenance of the spouse or children, then further inquiry must be made to determine the continuing nature of the debt up to the filing of the petition in bankruptcy. In other words, even if the debt was originally imposed on the basis of the need of the spouse or children, the debt cannot be held nondischargeable unless at the time of filing there exists a present need by the spouse or children that the debt be paid.

This present determination of the nature of the debt in light of possibly changed circumstances is necessary to enforce the general purpose of the bankruptcy laws in providing relief for the debtor. The intent of both section 17(a)(7), former 11 U.S.C. § 35a(7), and 11 U.S.C. § 523(a)(5) is to insure that the debtor's dependents will not be left destitute and that the debtor will not be relieved of his legal obligation of support. However, if, for example, a state court imposed an obligation on the debtor based on his spouse's need for support years ago when the divorce was granted, but in light of changed circumstances, the spouse today earns more than the debtor and needs no support from the debtor, it would defeat the policy behind the bankruptcy laws to

hold the debt nondischargeable. When one considers that according to the statutory provisions, any debt, not just traditional alimony payments, can be found to be support and thus nondischargeable, the potentially unfair burden on the debtor, if only the original circumstances were considered, might effectively abrogate his fresh start in a situation where no countervailing necessity of support exists. Thus, evidence subsequent to the divorce decree must be considered by the bankruptcy court to insure a fresh start for the debtor in the absence of an actual need for support by his former spouse or children.

Furthermore, weight must be given to the terms of Section 17a(7) itself. It excepts from discharge those debts which "are" for "maintenance or support of wife or child," thus putting the determination of the matter in the present tense. Section 523(a)(5) has no specific tense attached to it.

Relevant evidence to be introduced by the parties on the question of what is excepted from discharge under section 17a(7), 11 U.S.C. § 35a(7), and under 11 U.S.C. § 523(a)(5) includes not only the intent and circumstances surrounding the original divorce or separation decree, but also any change in circumstances that have occurred since that original determination up to the time of the filing of the petition in bankruptcy.

Finally, in the *Warner* case, an additional problem arises from the fact that the divorce decree was entered not before, but after the discharge in bankruptcy. If it had been entered before the discharge, it would have been obvious that the nondischargeability of Wilbur Warner's debts would have to be resolved by this Court. The fact that he was adjudged a bankrupt before the divorce decree was entered, however, does not foreclose the jurisdiction of this Court in determining the nature of the required payment by the bankrupt. Congress intended that the bankruptcy court resolve Section 17 questions. The nondischargeability of debts is a question specifically reserved for resolution in this Court. As such, in spite of the timing of the divorce decree, the issue of dischargeability of the debts is properly raised and decided before this court. *See Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1954).