**In re Jesse David LOVETT, Debtor.**

**Bankruptcy No. 80-00108.**

United States Bankruptcy Court,
D. Utah, N. D.

Sept. 26, 1980.

Pete N. Vlahos, Ogden, Utah, for debtor, Jesse D. Lovett.

Philip J. Williamson, Deputy Weber County Atty., Ogden, Utah, for Ruby Raab, the debtor's ex–wife.

## MEMORANDUM DECISION AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

On January 28, 1980, Jesse David Lovett, the debtor, filed a petition in bankruptcy under Chapter 13. Prior to the filing, the debtor's ex–wife, Ruby Raab, petitioned Weber County District Court for relief against the debtor for delinquent child support payments under the Reciprocal Enforcement of Support Act, Utah Code Ann. § 77–61a–1 et seq. (1978). A judgment was rendered in that court on February 5, 1980, subsequent to the debtor's filing in bankruptcy and prior to the Section 341 meeting of creditors. The court awarded Mrs. Raab the amount in arrears, specifically holding that under 11 U.S.C. § 362(b)(2), the entry of a judgment for alimony, maintenance or support due is not stayed in bankruptcy. The Court specified, however, that the enforcement of the judgment would require separate analysis to determine whether action was stayed under 11 U.S.C. § 362(a). The debtor then moved this Court to stay the judgment and enforcement thereof. Since the filing of this motion the debtor has converted to a Chapter 7 case. The issue now to be addressed by the Court concerns the validity and enforceability of the state court judgment.

11 U.S.C. § 362(b)(2) excepts from application of the automatic stay "the collection of alimony, maintenance, or support from property that is not property of the estate." As in other questions involving the impact of bankruptcy on debts arising from alimony or support obligations, the roles to be played by the federal and state courts are not entirely clear and the balance to be struck between the two forums is a delicate one.

The Court's decision in *In re Warner*, 5 B.R. 434, Nos. 78–00046 and 79–01597 (D.Utah Aug. 2, 1980) clarifies to some extent the jurisdiction of the federal and state forums over questions of alimony and support obligations in bankruptcy. The underlying obligation of support from which liability arises is a question governed by state law. Thus, the granting of the divorce decree and the creation and validity of an obligation of support are state law questions. Likewise, the decision to recognize an obligation of support created in another state is also a question of state law which, in this case, is governed by Utah's enactment of the Reciprocal Enforcement of Support Act in Utah Code Ann. § 77–61a–1 et seq. (1978). Once the existence of an obligation of support has been established under state law, the determination of its dischargeability in bankruptcy is strictly a matter of federal law. *See Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Warner, supra.*

■ Applying the *Warner* analysis to the case at hand and extending it to embrace the new exception from the stay embodied in 11 U.S.C. § 362(b)(2), it appears to the Court that the state court judgment, insofar as it establishes the existence of a debt recognizable by the state under the Reciprocal Enforcement of Support Act, is valid and binding on this Court. However, the extent to which that judgment reflects a nondischargeable debt which may be collected from post–petition property of the debtor or from other property which may not be property of the debtor's estate is a federal law question which must be determined in this Court. Section 362(b)(2) excepts from the automatic stay only "the *collection* of alimony, maintenance, or support" (emphasis added), but before collection can be attempted, what constitutes alimony, maintenance and support such as to survive a discharge in bankruptcy must be determined by the bankruptcy court.

■ As elucidated in *In re Warner*, *supra*, the bankruptcy court must examine the nature of the obligation established in a divorce or separation decree or subsequent judgment to determine whether it arises from an obligation of support. The divorce decree and proceedings which have created the debt are relevant insofar as the principle of collateral estoppel applies. Thus, where an actual trial has been held, "the judgment in the first suit operates as collateral estoppel as to, but only as to, those matters of points which were in issue or controverted upon the determination of which the initial judgment depended." 1B *Moore's Federal Practice* ¶ 0.441(2), at 3777 (2d ed. 1974). Even though in practice many divorces are obtained by default or by stipulation, with little actually being litigated, a clear award of alimony or child support will be given significant weight in the bankruptcy court. Additionally, evidence of changed circumstances since the entry of the decree and up to the filing of bankruptcy must be considered to determine whether a debt originally imposed to discharge a support obligation fulfills a present need for support. These determinations must be made by the bankruptcy court as a matter of federal law before collection on the judgment can proceed.

■ A question is raised as to whether the debt in question is due the debtor's spouse or whether it was assigned to the state in return for payments made by the state to the spouse for support. If assigned to the state, then under 11 U.S.C. § 523(a)(5)(A), the debt will be dischargeable. Although it is not entirely clear from the facts as given, it appears that the debt has not been assigned to another entity, but rather that under Utah Code Ann. § 77–61a–12 (1978), the county attorney is representing the spouse as a petitioner under the Reciprocal Enforcement of Support Act. In any case, this determination can be made during a proceeding to establish the nondischargeability of the debt embodied by the state court judgment.

■ Finally, inquiry over the extent of the debtor's estate, and thus, a determination of what property is not property of the debtor's estate for purposes of proceeding under Section 362(b)(2), must also be addressed by this Court. When a bankruptcy case is commenced, the estate created is comprised, under 11 U.S.C. §§ 541 and 1306, of all legal, equitable and proprietary interest that the debtor holds at that time, and in some instances, interests that are acquired after the commencement of the case. The extent of the debtor's estate in this case can therefore be determined only after specific application of the law to the particular facts as they may appear in this proceeding.