**In re Brian YEATES, Debtor.**

**Paulette YEATES, Plaintiff,**

v.

**Brian YEATES, Defendant.**

**Bankruptcy No. 81–0268.
Civ. No. NC–84–0058W.**

United States District Court,
D. Utah, N.D.

Nov. 28, 1984.

N. George Daines, Logan, Utah, for plaintiff Paulette Yeates.

Clint S. Judkins, Tremonton, Utah, for defendant Brian Yeates.

WINDER, District Judge.

This is an appeal from a bankruptcy court order discharging in bankruptcy a $6,000.00 debt Brian Yeates had agreed to assume and pay as part of a property settlement agreement with his former spouse, Paulette Bryan. The court has read the briefs submitted by the parties as well as the authorities cited. Oral argument was not requested. Being now fully advised, the court renders this memorandum decision and order.

### Factual Background

Brian Yeates and Paulette Bryan were married on February 2, 1979, in Logan, Utah. Each had two children at the time of marriage. At that time Ms. Bryan owned a trailer home. She had about $6,000.00 equity in the trailer home. Some time after the marriage, Mr. Yeates sold the home he had previously owned.

A few months after the marriage, the Yeates decided to purchase a home to live in. Part of the down payment, $12,000.00, was borrowed from Ms. Bryan's parents, the Buttars. Eventually, Ms. Bryan sold the equity in her trailer home to pay her share of the down payment. Mr. Yeates' share of the debt to the Buttars, $6,000.00, was discharged in bankruptcy.

After eleven months of marriage, the parties separated and Ms. Bryan sought a divorce. They stipulated to a property settlement agreement and waiver. *Yeates v. Yeates*, Civil No. 18402 (Dist.Ct., Cache County, Utah Jan. 25, 1980) (stipulation, property settlement agreement and waiver). Based upon that stipulation, they obtained a divorce on March 10, 1980, from Judge VeNoy Christofferson, District Judge for the First Judicial District of Utah.

The stipulation provides that Ms. Bryan would remain in the family home. *Id.* ¶ 4. It also provides

> That the parties agree to complete a loan with Transamerica Financial Services in the amount of $6,000.00 to be secured against the above home and shall be paid by the Defendant in consideration of Plaintiff waiving her right to alimony. The parties further acknowledge that this loan is to pay the support debts of the parties during their marriage, except for those debts set forth in this agreement.

*Id.* ¶ 7.

At the time of divorce, Ms. Bryan's salary was $9,000.00 per year. Transcript of Proceedings at 99, *Yeates v. Yeates*, Civ. Pro. No. 81PC–0268 (Bankr.D.Utah Feb. 23, 1984) [hereinafter cited as "Tr."]. Although Ms. Bryan testified that Mr. Yeates was making twice as much as she was, he testified that he made only $12,000.00 to $14,000.00 a year. *Id.*

Mr. Lyle Hillyard represented Ms. Bryan in the uncontested divorce. It was he who drafted the stipulation, property settlement agreement and waiver. *Id.* He stated that he drafted the stipulation intending that the debt be assumed by Mr. Yeates in lieu of paying alimony to Ms. Bryan. Tr. at 37. He also stated that he attempted to structure the debt so that it would not be dischargeable in bankruptcy. Tr. at 38. Although Ms. Bryan was aware that Mr. Hillyard intended the debt to be nondischargeable, it is unclear whether Mr. Yeates was aware of Mr. Hillyard's intention. Tr. at 101–02.

Mr. Yeates filed bankruptcy approximately one year after the divorce. Ms. Bryan brought an action contesting the discharge of the $6,000.00 debt to Transamerica. She claims that the debt is nondischargeable as alimony, maintenance, or support. 11 U.S.C. § 523(a)(5). Judge Glen E. Clark of the Bankruptcy Court held that the debt was discharged. *Yeates v. Yeates*, Civ.Pro. No. 81PC–0268 (Bankr.D. Utah Apr. 19, 1984) (judgment of dismissal).

### The § 523(a)(5) Exemption

Ms. Bryan claims that the $6,000.00 debt at issue here is exempt from discharge under 11 U.S.C. § 523(a)(5). That statute provides that

> A discharge under [this act] does not discharge an individual debtor from any debt—

> .     .     .     .     .

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property

settlement agreement, but not to the extent that —

> .     .     .     .     .

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ....

*Id.*

The legislative history gives little indication as to how Congress intended support[1] to be distinguished from a property settlement. The most significant fact to be gleaned from the legislative history is that state law is *not* the basis for distinguishing between support and property settlements. The section-by-section analysis in the House Report explains, in pertinent part, that under 11 U.S.C. § 523(a)(5):

> What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6320.

The House Report also expressly states that debts on which a debtor has agreed to hold his former spouse harmless are exempt from discharge if they are in the nature of support.

> This provision will, however, make nondischargeable any debts resulting from an agreement to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.[2]

---

1. Through the remainder of this decision, the word "support" will be used to represent "alimony, maintenance, or support."

2. The language of the House Report states that the bankruptcy law considerations are "similar to considerations of whether a particular agreement ... is actually alimony or a property settlement." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 364, *reprinted in* 1978 U.S. Code Cong. &

Ad. News 5963, 6320. It is unclear what "considerations" the House Report was referring to.
The House Report was clearly not referring to the state law determination as to whether alimony should be awarded, since that is not a question of whether an agreement to pay is alimony or a property settlement. Apparently, the House Report refers to the federal bankruptcy law in effect at that time, which also distinguished between support and property settle-

*Id.* This language is evidence of Congress's clear intent to exempt support payments even if they do not qualify as alimony under state law.

Similar language is found in the Senate Report on the bill. S. Rep. No. 95–989, 95th Cong., 1st Sess. 79, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5865. In the Senate Report, however, the final phrase reads "as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." *Id.* The language in the Senate Report particularly emphasizes the fact that the bankruptcy law considerations are independent from state law.

### The "Duty of Support" Test

In determining whether the debt Mr. Yeates agreed to pay was dischargeable, the bankruptcy court applied the standard found in *In re Warner*, 5 B.R. 434 (Bankr. D.Utah 1980). *See* Tr. at 99. The key test in *Warner* is whether the debtor owed his former spouse a "duty of support" under state law at the time of divorce.

> The bankruptcy court must first determine whether a duty of support exists between the parties under applicable state law.

*Warner*, 5 B.R. at 439. If such an obligation is found to exist,

> [t]he court must then apply federal law to characterize the debts arising from this relationship for the purpose of determining the effect of bankruptcy upon those debts.

*Id.*

The *Warner* court purported to create a two-part test. The first part of the test is to determine whether a duty of support exists under state law. The second part is to determine whether the debt is dischargeable under federal law. In reality, the *Warner* test collapses down to a simple one-part test based on state law. The *Warner* court itself summarized the test as

> if a debt is imposed to discharge the state law duty of support, no matter what the form of the obligation, it is · nondischargeable in bankruptcy.

*Id.* at 440.

### Federal Law Standard

■ The focus on a state law duty of support in the *Warner* test is improper. Instead, the bankruptcy court should have applied the statutory test—whether the obligation is in the nature of support—with reference to federal law, not state law.

Congress did not define "alimony, maintenance, or support" in the Bankruptcy Act. The legislative history also has no definition, and does not spell out the considerations to be used in distinguishing between support payments and property settlements. However, the statute and legislative history do make it clear that the distinction is one of federal law, not state law. The problem with a test based on state law, such as the *Warner* test, is that there will be a different standard in each state, a standard which will depend on the relative strictness or leniency of the state's divorce laws.[3] Congress intended that there be one federal standard. Therefore, the state-law-based *Warner* test is inappropriate, and a uniform federal law must be developed by the federal courts.

The bankruptcy law determination as to whether an agreement to pay is support or

---

ments. *See Hearings on HR 31 and HR 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary,* 94th Cong., 1st and 2d Sess., ser. 27, pt. 3, pp. 1287–90 (1975–76) (testimony of Judge Joe Lee, Bankr.D.Ky.).

**3.** Reliance on state law often leads to rather ridiculous extremes. In this case, for example, testimony was presented to the bankruptcy court as to whether Judge VeNoy Christofferson, who granted the divorce, would have awarded alimony had the issue been before him. *See* Tr. at 42–43.

Certainly Congress did not intend that a bankruptcy court attempt to decide whether the state court judge who granted the divorce would have awarded alimony if a stipulated property settlement had not mooted the issue. The fact that this type of inquiry is inherent in a state-law-based "duty of support" test underscores the wisdom of Congress in requiring the creation of a federal law standard.

a property settlement will involve some of the same considerations as the state law determination as to whether alimony will be awarded. The focus, however, is quite different. A state court judge decides if a legal obligation to pay alimony should arise. A bankruptcy court judge is faced with a different situation, since in his case a legal obligation already exists. He must determine whether that already existing obligation is support or a property settlement.

■ Many of the same factors will enter into both determinations, but the weight accorded the factors will be different. In the state law determination, the following factors will be examined: ability of the spouse to provide for her own basic necessities absent support; length of the marriage; whether children were born during the marriage; the relative earning power of the parties; and the ability of the parties to work due to age, health, and work skills. Although the other factors might be considered in the bankruptcy court determination, the ability of the spouse to provide for her own basic necessities will almost always be determinative. If discharge of the debt in bankruptcy would leave the former spouse unable to satisfy her basic needs, the debt should not be discharged. However, if the former spouse can provide for her own needs with her own funds, the debt should be discharged in order to give the debtor a fresh start, which is the objective of the bankruptcy laws.

### No Balancing Necessary

The *Warner* court stated that the bankruptcy court must balance two competing policy considerations:

> that of requiring the bankrupt to fulfill obligations to his ex-wife arising out of the broken marriage contract and that of giving the bankrupt a fresh start unencumbered by the burdens of preexisting debt ....

*Warner*, 5 B.R. at 441 (quoting Lee, *Case Comment*, 50 Am.Bankr.L.J. 175, 177 (1977)). The notion that a bankruptcy court should engage in this type of balancing is incorrect.

There is no need for a bankruptcy court to attempt to strike a balance between the two competing policy considerations in every case. That balance has already been struck by Congress, and is embodied in 11 U.S.C. § 523(a)(5). Congress has balanced the debtor's need for a fresh start with the former spouse's need for the property settlement to be enforced. Initially, the House version of the bill exempted all property settlement debts from discharge. *See Hearings, supra,* at 1287–88. The final balance was struck in a compromise between the House and Senate by allowing all property settlement debts to be discharged except for those in the nature of alimony, maintenance, or support. Therefore, the bankruptcy court must simply determine whether a particular debt is in the nature of alimony, maintenance, or support. If so, it cannot be discharged.

The language of § 523(a)(5) reflects a Congressional intent to not allow bankruptcy courts to balance competing policy considerations. *See In re Nelson,* 20 B.R. 1008, 1011–12 (M.D.Tenn.1982); *In re Calhoun,* 715 F.2d 1103, 1111 & n. 14 (6th Cir.1983). As pointed out in *Nelson,* the exemption for educational loans, found in 11 U.S.C. § 523(a)(8), is indicative of Congressional intent to permit the balancing of general equitable considerations in those cases. That section provides that certain educational loans will be discharged if necessary to avoid an "undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The language in § 523(a)(8) shows that not expressly providing for balancing in § 523(a)(5) was not an oversight. Instead, the structure of § 523(a)(5) reflects Congressional intent that a balancing process not be used in determining whether an agreement to pay is support or a property settlement. The bankruptcy court should accept Congress's balancing and limit its inquiry to whether the agreement to pay is in the nature of alimony, maintenance, or support.

### Debtor's Current Finances Irrelevant

■ The *Warner* court was also incorrect in stating that the financial condition of the debtor at the time of bankruptcy is a relevant consideration. *Warner*, 5 B.R. at 442–43. The financial condition of the *debtor* is irrelevant in determining whether a payment is in the nature of support. Certainly Congress was aware that a debtor in bankruptcy will have suffered a constantly worsening financial condition. As discussed above, the structure of § 523(a)(5) shows that Congress intended that this factor not be considered.

As noted by the *Warner* court, however, the financial condition of the former spouse will be relevant. A "material and substantial" improvement in the financial condition of the former spouse will often change the nature of a payment from necessary support to a mere increase in income. *See Roth v. Roth*, 355 N.W.2d 516 (Neb.1984) (applying the "material and substantial" improvement test in determining whether alimony must still be paid). A change in the underlying nature of the payment will make it superfluous, and dischargeable. This is generally the case with support payments, since death or remarriage almost always terminates the support obligation.

Thus, in considering the financial condition of the former spouse at the time of bankruptcy, the bankruptcy court is well within the mandate of § 523(a)(5). Rather than considering general equitable factors, it is making the required determination of whether the agreement to pay is still "in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). *See Warner*, 5 B.R. at 443.

### Correct Legal Standard

■ The correct legal standard for determining whether an agreement to assume a joint debt is support or a property settlement involves two main determinations.

First, the bankruptcy court should determine whether, at the time of divorce, the agreement to pay was necessary for the former spouse to maintain the "daily necessities," such as food, housing, and transportation.[4] *See In re Calhoun*, 715 F.2d 1103, 1109 (6th Cir.1983), and the cases cited therein. Second, the court should determine whether, at the time bankruptcy was filed, the agreement to pay is still necessary for the former spouse to maintain the daily necessities. This determination should be made in light of the former spouse's financial condition at the time of the bankruptcy filing. If the answer to either question is "no," the debt must be discharged. If the answer to both questions is "yes," the debt is exempt from discharge under 11 U.S.C. § 523(a)(5).

### Legal Standard Applied to Facts

The positions of the two parties in this case are clear. Neither party to this action disputes that a property settlement agreement was reached and a divorce was properly granted. Mr. Yeates contends that he assumed the $6,000.00 debt at issue in a property settlement. Ms. Bryan contends that Mr. Yeates assumed the debt in order to provide her with necessary support. The issue, therefore, is whether the debt was assumed to provide support or as a property settlement.

■ Applying the legal standard discussed above to these facts, the evidence indicates that the debt at issue is necessary for support and should not be discharged. This court, when hearing a bankruptcy appeal, may not set aside findings of fact made by a bankruptcy court unless they are clearly erroneous. Bankr.R.8013. Questions of law, on the other hand, are freely reviewable on appeal. The bankruptcy court applied an incorrect legal standard in determining that the debt in this case is dischargeable. The evidence presented at the bankruptcy hearing indi-

---

**4.** It may be that only part of a debt must be paid by the debtor in order to provide for the former spouse's necessities. For example, only $10,-000.00 of a $20,000.00 debt might reasonably be considered support. In such a case, the debt should be exempt from discharge only as far as necessary to provide support. *See In re Calhoun*, 715 F.2d 1103, 1110 (6th Cir.1983).

cates that the debt is nondischargeable under the correct legal standard. Therefore, the bankruptcy court's decision is reversed.

The evidence is uncontradicted that Ms. Bryan was in dire financial straits at the time of the divorce. *See* Tr. at 13–15, 17–18 (testimony of Ms. Bryan); Tr. at 36, 43, 47–48, 50–51 (testimony of Mr. Lyle Hillyard, Ms. Bryan's divorce counsel). She was in danger of losing her home. *See* Tr. at 15, 18 (testimony of Ms. Bryan); Tr. at 49 (testimony of Mr. Hillyard). She no longer had the house trailer, since her parents were holding it as security for the $6,000.00 they had loaned her to pay the down payment on the house. *See* Tr. at 32 (testimony of Ms. Bryan); Tr. at 62 (testimony of Mr. Yeates). This evidence shows that the agreement by Mr. Yeates to pay off the $6,000.00 Transamerica loan was necessary to enable Ms. Bryan to keep her house, one of the basic necessities of life.[5]

The bankruptcy court noted that Ms. Bryan has been able to make payments on the house. Tr. at 103–04. Some of the payments were made with money she received from her parents. Tr. at 104. However, there is no evidence that Ms. Bryan's financial condition has "materially and substantially" improved since the time of the divorce. She appears to be in much the same financial condition now as then. *See* Tr. at 13. Certainly there is no evidence of any significant event, such as obtaining a much higher-paying job or remarrying, that would enable her to better obtain the basic necessities of life.

Mr. Yeates contends that because Ms. Bryan has been able to obtain support from her parents, she does not need support from him. Tr. at 96 (closing argument of Mr. Judkins, counsel for Mr. Yeates). However, the fact that a person is able to "keep the wolf from the door" by obtaining financial help from relatives, the government, or charitable institutions does not

absolve her former spouse from responsibility. His obligation is still the primary one. Ms. Bryan's parents are not obligated to pay Mr. Yeates's support payment. That they are making some of the payments Mr. Yeates agreed to make does not change the nature of those payments. They are still necessary for Ms. Bryan's basic support.

Accordingly,

IT IS HEREBY ORDERED that the bankruptcy court decision in this case is reversed. Mr. Yeates's $6,000.00 debt to Transamerica is not discharged in bankruptcy because it is exempt from discharge under 11 U.S.C. § 523(a)(5).

---

5. It is true that Ms. Bryan could probably find some sort of cheaper housing, either in a rental apartment or perhaps with her parents. However, support "includes those needs or necessaries that are essential in maintaining a spouse in a manner commensurate with her former status as a wife." *In re Daumit*, 25 B.R. 371, 372 (Bankr.D.Md.1982). Since the couple maintained a house during their marriage, it is not unreasonable to consider maintaining the house to be necessary support for Ms. Bryan.