McKAY, Circuit Judge.
 

 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.
 
 See
 
 Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore submitted without oral argument.
 

 Debtor, Brian Yeates, asks this court to reverse the district court’s decision finding that a $6,000 debt that debtor agreed to pay when he was divorced from plaintiff, Paulette Yeates, is “in the nature of alimony, maintenance, or support” under 11 U.S.C. § 523(a)(5) (1982 & Supp. Ill 1985), and, thus, not dischargeable in bankruptcy.
 

 I.
 

 Debtor and plaintiff were married on February 2, 1979. Shortly after their mar
 
 *876
 
 riage, the parties decided to purchase a home. They borrowed $12,000 from plaintiffs parents to use as a down payment and financed the remainder of the purchase price through a mortgage with First Security Bank.
 

 Approximately one year after their marriage, plaintiff sought a divorce. Based on an agreement between the parties entitled “Stipulation, Property Settlement Agreement and Waiver,” a Utah court entered a divorce decree. For purposes of this case, the pertinent portions of the stipulation are:
 

 3. That the parties agree to waive any and all right to alimony, one from the other.
 

 4. That the parties agree that the Plaintiff should be awarded the home of the parties ... subject to Plaintiff assuming the mortgage with First Security Bank....
 

 [[Image here]]
 

 7. That the parties agree to complete a loan with Transamerica Financial Services in the amount of $6,000.00 to be secured against the above home and shall be paid by [debtor] in consideration of Plaintiff waiving her right to alimony.
 

 Record, vol. 1, at 101-02. The pertinent portions of the divorce decree are:
 

 2. That neither party is awarded alimony either past, present, or in the future.
 

 3. That the Plaintiff is awarded the home of the parties ... subject to Plaintiff assuming the mortgage with First Security Bank.
 

 [[Image here]]
 

 7. That [debtor] is hereby ordered to assume and pay the loan to [sic] Tran-samericia [sic] Financial Services in the amount of $6,000.00, in consideration of Plaintiff waiving her right to alimony.
 

 Id.
 
 at 104-05. Since there were no children from the marriage, neither the decree nor the stipulation made any provision for child support payments.
 

 After the divorce, plaintiff made the payments on the first mortgage, but debtor failed to make any payments on the $6,000 Transamerica debt. In order to meet such payments, plaintiff was forced to seek assistance from her parents.
 

 Approximately one year after the divorce, debtor filed for bankruptcy. Shortly thereafter, plaintiff asked the bankruptcy court to declare that the Transamerica debt was nondischargeable, because it was in the nature of support
 
 [1]
 
 under section 523(a)(5). Debtor claims that the debt is not in the nature of support, but rather represents a division of property and, thus, is dischargeable in bankruptcy. After a hearing on the merits, the bankruptcy court concluded that the plaintiff
 

 left the marriage in no worse position that [sic] she entered it. She was still employed at the same job. She gained a home. Payments on that home were made during the period of the marriage. Presumably, there is some equity in the home. ...
 
 [TJhere was no duty of support
 
 and, therefore, ... the agreement was not in the nature of alimony, maintenance or support.
 

 Transcript of Proceedings Before the Bankruptcy Court at 104 (emphasis added). Consequently, the debt was discharged.
 

 Plaintiff appealed to the district court, claiming that the “duty of support” standard used by the bankruptcy court was an incorrect legal standard. The district court reversed, finding that if the bankruptcy court had used the correct legal standard, it would have found that the debt was in the nature of support.
 
 Yeates v. Yeates (In re Yeates),
 
 44 B.R. 575, 580-81 (D.Utah 1984). The issue before this court is whether the district court erred in reversing the decision of the bankruptcy court.
 

 II.
 

 Under Bankruptcy Rule 8013, the district court must accept findings of fact of the bankruptcy court unless those findings are clearly erroneous.
 
 First Bank v. Reid (In
 
 
 *877
 

 re Reid),
 
 757 F.2d 230, 233 (10th Cir.1985).
 
 [2]
 
 However, the clearly erroneous standard “does not apply to questions of law or mixed questions of law and fact.”
 
 Jarboe v. United Bank (In re Golf Course Builders Leasing, Inc.),
 
 768 F.2d 1167, 1169 (10th Cir.1985) (citing
 
 Stafos v. Jarvis,
 
 477 F.2d 369 (10th Cir.1973)). Thus, the district court was correct when it stated: “This court, when hearing a bankruptcy appeal, may not set aside findings of fact made by a bankruptcy court unless they are clearly erroneous. Bankr.R. 8013. Questions of law, on the other hand, are freely reviewable on appeal.”
 
 Yeates,
 
 44 B.R. at 580.
 

 Under Bankruptcy Rule 8013 and Fed.R.Civ.P. 52(a), this court must apply the same standard.
 
 Golf Course Builders,
 
 768 F.2d at 1169;
 
 Reid,
 
 757 F.2d at 233. We must affirm findings of fact of the bankruptcy court unless they are clearly erroneous, but we may freely review questions of law.
 

 III.
 

 Plaintiff claims that the Transamerica debt is exempt from discharge under 11 U.S.C. § 523(a)(5). That section, in relevant part, states:
 

 (a) A discharge under [this act] does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—
 

 [[Image here]]
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support....
 

 Both parties agree that the decision in this case is controlled by the dimensions of the terms: “in the nature of alimony, maintenance, or support.”
 

 A.
 
 The Influence of State Law
 

 Congress did not define “in the nature of support.” However, the legislative history indicates that “[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws,
 
 not State law.”
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 364,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6320; S.Rep. 989, 95th Cong., 2d Sess. 79,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5865 (emphasis added). The legislative history further states:
 

 This provision will ... make nondis-chargeable any debts resulting from an agreement by the debtor to hold the debtor’s spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.
 

 H.R.Rep. No. 595, at 364,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6320;
 
 see also
 
 S.Rep. No. 989, at 79,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 5865. The question, thus, is whether the obligation was assumed in lieu of support or constitutes a property settlement, and, as stated above, bankruptcy law, not state law, must control that characterization.
 

 This is not to say that state law has no effect. Domestic law principles are particularly within the domain of the state courts, and Congress could not have meant
 
 *878
 
 that the bankruptcy courts were to ignore well-developed principles of state law.
 
 Long v. Calhoun (In re Calhoun),
 
 715 F.2d 1103, 1107 (6th Cir.1983);
 
 Pauley v. Spong (In re Spong),
 
 661 F.2d 6, 9 (2d Cir.1981). The district court in the present case correctly stated:
 

 The bankruptcy law determination as to whether an agreement to pay is support or a property settlement will involve some of the same considerations as the state law determination as to whether alimony will be awarded. The focus, however, is quite different. A state court judge decides if a legal obligation to pay alimony should arise. A bankruptcy court judge is faced with a different situation, since in his case a legal obligation already exists. He must determine whether that already existing obligation is support or a property settlement.
 

 Yeates,
 
 44 B.R. at 578-79. State law provides guidance, but bankruptcy law controls the determination of whether a payment is for support or reflects a property settlement. Since state law only provides guidance, a debt could be in the “nature of support” under section 528(a)(5) even though it would not legally qualify as alimony or support under state law.
 
 See Melichar v. Ost (In re Melichar),
 
 661 F.2d 300, 303 (4th Cir.1981),
 
 cert. denied,
 
 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982).
 

 B,
 
 The Correct Legal Standard
 

 The “duty of support” test employed by the bankruptcy court is not appropriate. That test requires the court to determine whether the debtor owes his former spouse a duty of support under state law.
 
 Warner v. Warner (In re Warner),
 
 5 B.R. 434, 439 (Bankr.D. Utah 1980). Although showing that the debtor owed a duty of support under state law at the time of the divorce may be some evidence that an obligation is in the nature of support under section 523(a)(5), state law cannot control. Rather, the initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement.
 
 Shaver v. Shaver,
 
 736 F.2d 1314, 1316 (9th Cir.1984);
 
 Boyle v. Donovan,
 
 724 F.2d 681, 683 (8th Cir.1984);
 
 Calhoun,
 
 715 F.2d at 1109;
 
 Melichar,
 
 661 F.2d at 303. This determination must be made by looking at the substance of the agreement “viewed in the crucible of surrounding circumstances.”
 
 Crist v. Crist (In re Crist),
 
 632 F.2d 1226, 1229 (5th Cir.1980). If the parties did not intend to create a support obligation, then the debt is a property settlement and must be discharged in bankruptcy. On the other hand, if the parties intended to create a support obligation, that debt should not be discharged.
 
 [3]
 

 A written agreement between the parties is persuasive evidence of intent.
 
 Tilley v. Jessee,
 
 789 F.2d 1074, 1077 (4th Cir.1986). Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control. On the other hand, if the agreement is ambiguous, then the court must determine the parties’ intentions by looking to extrinsic evidence.
 
 See, e.g., Shaver,
 
 736 F.2d at 1316 (examining several factors to aid in characterization of debt);
 
 Melichar,
 
 661 F.2d at 303 (testimony of both parties to the agreement supported finding of intent to provide support).
 

 IV.
 

 The agreement between the parties in the present case does not provide clear evidence of intent. Unlike the agreement
 
 *879
 
 in
 
 Tilley,
 
 it does not clearly segregate the property settlement provisions from the alimony provisions. Furthermore, even though one paragraph of the agreement purports to waive any right to alimony, the paragraph in which the debtor agrees to assume the Transamerica debt specifically states that such assumption was made “in consideration of Plaintiff waiving her right to alimony.” Therefore, the bankruptcy court and the district court correctly looked to extrinsic circumstances to determine the character of the obligation.
 

 The spouse’s need for support is a very important factor in determining the intent of the parties. When the agreement is ambiguous, evidence that payment of the debt is necessary in order for the plaintiff to maintain daily necessities such as food, housing and transportation indicates that the parties intended the debt to be in the nature of support.
 
 See Calhoun,
 
 715 F.2d at 1109;
 
 Yeates,
 
 44 B.R. at 580. In the present case, the parties agreed that plaintiff was entitled to receive the home. Plaintiff was in dire financial circumstances at the time of the divorce and was able to make the payments on the Transamerica debt only by borrowing money from her parents. She would have lost the home if she failed to make those payments. Payment of the Transamerica debt by debtor was necessary for plaintiff to maintain the home. Hence, the district court correctly found that the debt was in the nature of support.
 

 Accordingly, the decision of the district court is AFFIRMED.
 

 [1]
 

 . Throughout this opinion, the term “support” will be used to represent “alimony, maintenance, or support” as those terms are used in § 523(a)(5).
 

 [2]
 

 . In
 
 Northern Pipeline Const. Co. v. Marathon Pipe Line,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court proscribed the exercise by bankruptcy judges of the Article III power to decide all civil disputes arising under the Bankruptcy Code. However, because deciding whether a debt is dischargeable is within the “core proceedings” of the bankruptcy court under 28 U.S.C. § 157(b)(2)(I) (Supp.III 1985),
 
 Marathon
 
 does not require the district court to conduct a de novo review of the bankruptcy court’s decision.
 
 Reid,
 
 757 F.2d at 233 n. 5.
 

 [3]
 

 . The district court stated that if the debt was assumed in lieu of support payments at the time of the divorce, "the court should determine whether, at the time bankruptcy was filed, the agreement to pay is still necessary for the former spouse to maintain the daily necessities.”
 
 Yeates,
 
 44 B.R. at 580. While at least one circuit has required the court to examine the need for support at the time of the bankruptcy to determine whether a debt is in the nature of support,
 
 Calhoun,
 
 715 F.2d at 1109, we do not need to reach that issue in this case. The circumstances of the plaintiff have not changed since the divorce.