In re Richard William MORRIS, Debtor.

**Ronald George DEEB, Plaintiff,**

v.

**Richard William MORRIS, Defendant.**

**Bankruptcy No. 81 M 0767.**

United States Bankruptcy Court,
D. Colorado.

Sept. 28, 1981.

William D. Nelsch, Denver, Colo., for plaintiff.

Arthur R. Karstaedt, III, Denver, Colo., for defendant.

## MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THIS MATTER comes before the Court upon a complaint objecting to discharge under 11 U.S.C. § 523(a)(5). The question to be decided is whether an attorney fee ordered by a State Court is in the nature of support for a minor child.

It appears that the District Court for the City and County of Denver named the plaintiff, Mr. Deeb, to represent the interests of the Defendant/Debtor's minor child in a proceeding concerning rights of visitation.[1] After conferring with psychiatrists, a psychologist, and the attorneys for both parents, Mr. Deeb drafted a structured visitation agreement which was signed by all concerned. Thereafter, Mr. Deeb rendered an accounting for his services and expenses to the State Court which ordered that each of the parents pay one half of the total amount. The Debtor father has filed a petition in bankruptcy and seeks to discharge his portion of the debt.[2] Mr. Deeb's complaint seeks a determination that the debt is nondischargeable as being in the nature of support.

Initially, the determination is governed by 11 U.S.C. § 523(a)(5) which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a . . . former spouse, or child of the debtor, for . . . support of such a spouse or child, in connection with a separation agreement, divorce decree or property settlement, but not to the extent that—

(A) Such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) Such debt includes a liability designated as . . . support, unless such liability is actually in the nature of support. . . .

To be nondischargeable, then, the debt must, among other things,[3] be "to the former spouse or child" and "actually in the nature of support".

### I

In passing the Bankruptcy Reform Act, Congress plainly intended that the policies and standards of bankruptcy law govern the question of whether a debt is in the nature of support. See: H.Rep. Report 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess., (1977) pp. 363–65; Senate Report 95–989 to accompany S. 2266, 95th Cong., 2nd Sess., (1978) pp. 77–79, U.S.Code Cong. & Admin.News 1978, 5787; *In re Warner*, 5 B.R. 434 (Bkrtcy.B.C.D. Utah, 1980). This does not mean, however, that prior state determinations are irrelevant. On the contrary, the Tenth Amendment enjoins the bankruptcy courts to accept state determinations unless the debt at issue was plainly created to serve or in fact serves an objective of domestic settlement other than support. *In re Knabe*, 8 B.R. 53, 56, 7 B.C.D. 185, 187 (Bkrtcy.B.C.S.D.Ind., 1980). See also, *In re French*, 9 B.R. 464, (Bkrtcy.B.C. S.D.Cal., 1981); *In re Pelikant*, 5 B.R. 404

---

1. At the time of this proceeding, the parties' marriage had been dissolved. Presumably, the order of dissolution dealt with the question of visitation.

2. I understand that the mother's portion of the debt has been paid.

3. While it hesitates to essay a comprehensive definition of the phrase, the Court finds that the instant case involves a debt created "in connection with a . . . divorce decree." This statutory language imposes only the weakest of causal requirements and therefore undoubtedly includes proceedings which are ancillary to and concern matters posed in the original action for dissolution.

(Bkrtcy.B.C.N.D.Ill., 1980); *In re Daiker*, 5 B.R. 348, 351 (Bkrtcy.B.C.D.Minn., 1980). The pertinent inquiry, therefore, is whether payment has been ordered in recognition and fulfillment of the debtor's duty to provide for the well-being of his or her child. In the case at hand, this inquiry must focus on the statutory authority underlying the state court's order.

■ That court's action was predicated upon C.R.S. 73 § 14–10–116, which provides that:

> The court may ... appoint an attorney to represent the interests of a minor or dependent child with respect to his custody, support and visitation. The court shall enter an order for costs, fees, and disbursements in favor of the child's attorney. The order shall be made against any or all of the parties; except that, if the responsible party is indigent, the costs, fees, and disbursements shall be borne by the state.

Although this provision does not in so many words state that fees and costs will be taxed to the parties because of their duty of support, it is difficult to believe that the General Assembly of Colorado could have understood otherwise since, in the vast majority of cases,[4] the "parties" to the enumerated actions will be the parents of the child. This conclusion is buttressed by the fact that indigency is one of the few real defenses to a contempt action for violation of a support order. *In re People in interest of Murley*, 124 Colo. 581, 239 P.2d 706 (1951); see also C.R.S. § 19–6–118(3). The parallel between the indigency defense and § 14–10–116 can hardly be a matter of coincidence. Furthermore, the mandatory language of § 14–10–116 suggests that it was formulated in recognition of a positive legal duty, and not merely to provide the trial court with a means of defraying litigation expenses. Finally, it is worth mention

that a similar statute dealing with the allowance of fees to a spouse's attorney has been interpreted by the Colorado Supreme Court as grounded in the duty of spousal support. *Allison v. Allison*, 150 Colo. 377, 372 P.2d 946 (1962).

This Court is therefore persuaded that the obligations created by C.R.S. § 14–10–116 are based first and foremost in what the Colorado General Assembly perceived to be the parent's duty to provide support for minor, dependent children. As effectuated by the state court's action, this legislative judgment has undoubtedly served to protect and foster the well-being of the Debtor's child. Accordingly, the subject debt falls well within the ambit of support contemplated by the drafters of the Code.

## II

■ As previously indicated, § 523(a)(5) of the Code requires that the debt be "to" the child of the debtor. The Defendant argues that while his debt may be in the nature of support, it is not owed "to" his child since, under any set of circumstances, payment will be due only to the Plaintiff.[5] Although it rests on a plausible interpretation of the Code's language, this identification of the right to payment with the receipt of payment is hardly mandated. Moreover, it is contrary to Congressional policy.

Read in combination with definitions provided by 11 U.S.C. § 101, section 523(a)(5) requires only that the debtor owe a duty of payment "to" the child. 11 U.S.C. § 101(4) and (10). This language is ambiguous. The preposition "to" may modify either "payment" (as debtor contends), or "duty". The Code does not, therefore, expressly equate a right to payment with the right to receive payment. As a general matter, it is apparent that a duty or right is distinguishable

---

4. Colorado allows a non-parent to petition for custody. C.R.S. 73 § 14–10–123(1)(b), (c). In such actions, § 116 could only serve to defray the costs of litigation. The fact that such cases are rare indicates that the legislature considered this to be at best a subsidiary purpose of the statute.

5. It is contended that the Plaintiff cannot claim against the child's estate in the event the debt is discharged. Thus payment of the debt will in no case be due the child. While the Court entertains some doubt on this question, it need not be addressed for the reasons which follow.

from the manner of its discharge. Certainly one may owe a duty of payment to another and yet fulfill that duty through actual payment to a third party. That this third-party payment may itself be obligatory is irrelevant to the question of whether the original obligee holds a right to its performance. In focusing upon the right to receive payment, the Defendant confuses the form of an obligation's discharge with its substance. A right to payment is not synonymous with the right to receive payment; an obligee need not in all cases be a payee.[6] In principle, therefore, § 523(a)(5) may be said to include cases where the child's right to payment is a right only to payment of a third party.

This interpretation is supported by considerations of policy and practice. Analysed both by itself and in conjunction with 11 U.S.C. § 727(b) and 1328(c)(2), § 523(a)(5) undoubtedly expresses a Congressional judgment that the need for enforcement of obligations arising out of the family relationship and the stability generated thereby outweighs the general bankruptcy goal of fresh start. The identification of right with receipt urged by the Debtor controverts this policy because it fails to account for methods normally employed by courts to discharge support obligations. In Colorado, as in most states, the parental duty of support is owed primarily to the child. *McQuade v. McQuade*, 144 Colo. 11, 354 P.2d 597 (1960). See generally, 59 Am.Jur.2d *Parent and Child* 50 *et seq.* As a common occurrence, however, this duty is discharged not by payment to the child but indirectly, by payment to third parties who have furnished goods or services to the child. Indeed, it is not unusual for debts to others for goods and services furnished a child to be reduced to a court order for support.

We may thus assume discharge of debts of this nature would, for a practical purpose, deprive state courts of third-party payment as an alternative in the formulation of support orders. In light of the foregoing, it requires no great insight to conclude that in many cases the Congressional goal of family stability will be harmed by a rule allowing discharge of third-party debts clearly incurred for the purpose of support. On the other hand, it requires some imagination to suppose, as does the Defendant, that Congress intended with § 523(a)(5) to create a world in which a court ordered support payment for goods or services is dischargeable or nondischargeable depending on whether it is payable to the custodial spouse or to a local purveyor. Faced with a strong expression of policy, I am unable to indulge in such quixoticness; therefore, I conclude that § 523(a)(5) requires only that the duty of payment at issue be one which the child is owed as the offspring of the debtor-parent and not as a payee-creditor.[7]

▮ This requisite is clearly met in this case. As previously discussed, the Defendant's indebtedness was created in recognition and fulfillment of his duty of support. As such, it is owed both to the Plaintiff and the child in the sense that while the former is entitled to receive payment, the latter is entitled to payment as the Debtor's child. Accordingly, I conclude that the subject debt is "to" the child within the meaning of § 523(a)(5).

Having found that the subject debt is both in the nature of support and owed to the Debtor's child, I also conclude that it is nondischargeable under § 523(a)(5). Accordingly, an appropriate order shall enter holding the Defendant responsible for the payment of sums owed the Plaintiff.

---

**6.** Congress has evidently reached this conclusion with regard to hold harmless agreements between spouses. See House and Senate Reports cited *supra*; 124 Cong.Rec. S17, 412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

**7.** In keeping with the logic of this interpretation, it is apparent that the assignment exception of § 523(a)(5)(A) refers only to cases wherein the child is not entitled in any sense to the parent's payment because the entirety of his or her rights have been transferred to an "entity". Such transfers usually occur in exchange for the entity's assumption of the duty of support. Since no such transfer and assumption has occurred between the Plaintiff and the Debtor's child, § 523(a)(5)(A) does not apply to the case at hand.