In re Jacqueline Lea BURTON, Debtor.

**LAKE COUNTY DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**Jacqueline Lea BURTON, Defendant.**

Bankruptcy No. 86–60694.
Adv. No. 86–6177.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Gary/Lafayette.

May 26, 1988.

Cynthia H. Kambesis, Lake County Dept. of Welfare, Gary, Ind., for plaintiff.

Robert J. Oates, Merrillville, Ind., for defendant.

## MEMORANDUM OPINION AND JUDGMENT[1]

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings

The Debtor commenced this Chapter 7 case on April 29, 1986. On December 3, 1986, the Lake County Department of Public Welfare (hereinafter: "County") as Plaintiff filed this adversary proceeding versus the Debtor alleging that a certain indebtedness to it by the Debtor in the sum of $27,948.50 is nondischargeable pursuant to § 523(a)(5).

A pretrial conference was held on May 7, 1987, and the parties stipulated as to the relevant and material facts as follows:

(a) That on or about the 12th day of April, 1984, the Lake County Department of Public Welfare took temporary custody, control and wardship of the child of the Defendant/Debtor, to wit: James Michael Burton, b. 1–17–75, pursuant to an order of the Lake Superior Court, Juvenile Division, under Cause No. J83–3099.

(b) That pursuant to Plaintiff's wardship and with the approval of the juvenile court, the child was placed by Plaintiff at Christian Haven, a residential treatment center, located in Gaston, Indiana, on April 6, 1984.

(c) That pursuant to the juvenile court's placement order and I.C. 31–6–4–18, the Plaintiff made payments on the monies expended on behalf of the child while in the care and custody of the Department of Public Welfare.

(d) That the mother was ordered to reimburse the Lake County Department of Public Welfare for the monies it expended for the child at the rate of $25.00 per month beginning September 9, 1984.

The parties further stipulated to argue the threshold issue of whether the County has the legal standing under § 523(a)(5) to have the indebtedness to it be determined as nondischargeable as being in the nature of support, reserving the issue of damages for a later date if the County has the requisite standing.

A briefing schedule was established and the issue has been fully briefed by the parties.

### II

### Conclusions of Law and Discussion

In determining whether such debt is an exception to discharge, the Court must determine two issues: first, did Congress intend to include Juvenile Court orders within the purview of § 523(a)(5) as amended, and secondly, does the order requiring the debtor to pay $27,948.50 at the rate of $25.00 dollars a week to the county constitutes support within the meaning of § 523(a)(5)? The court has found in the affirmative as to both these questions, concluding that such debt is excepted from discharge.

Section 523(a)(5) as *presently* constituted provides as follows:

(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

1. This Order constitutes the Courts Finding of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52 as made applicable by Bankruptcy Rules 7052.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation, agreement, divorce decree or other order of a court of record, *determination made in accordance with state or territorial law by a governmental unit,* or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; (Emphasis added).

Section 523(a)(5) was amended by the Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986, P.L. 99–554, October 27, 1986, ("U.S. Trustee Act") or after the filing of the Debtors case, and added those words and phrases as emphasized above.

Section 523(a)(5) was also previously amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, July 10, 1984 ("BAFJA"), which added the phrases, "or other court of record" and "or any such debt which has been assigned by the Federal Government or to a State or any political subdivision of such State".

The Debtor filed her petition commencing this on April 29, 1986 and thus, § 523(a)(5) as in effect *subsequent* to the BAFJA Amendments effective October 1, 1984, Pub. L. 98–353 Title III, Sect. 553, 98 Stat. 392, and *prior* to the US. Trustee Amendments effective 30 days after enactment [October 27, 1986], shall control.

Section § 523(a)(5) as it read at the time the Debtor filed her case and which is applicable to this adversary proceeding read as follows:

(A) A discharge under Section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, *or other order of a court of record* or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; (Emphasis added).

The county asserts it is under the control of the Indiana State Department of Public Welfare, and thus a political subdivision of this state, and that the monies expended by it for the care of the Debtor's child are nondischargeable as support pursuant to § 523(a)(5).

In support thereof, the County cites the case of *In re Marino,* 29 B.R. 797 (Bankr. N.D.Ind.1983), a case decided *prior* to the enactment of BAFJA. There the debtor's minor son was made a ward of the Department of Public Welfare and the debtor was ordered to reimburse the Department for all monies expended by it in support of the debtor's son. The debtor filed bankruptcy and the Department filed its complaint objecting to the discharge of the debt. The Bankruptcy Court entered an order holding the debt nondischargeable pursuant to § 523(a)(5). On appeal the District Court reversed, and held that § 523(a)(5), as then constituted, provided that the support obligation must be "in connection with a divorce decree, separation or property settlement agreement", and therefore the debt to the Department did not meet the re-

quirements of § 523(a)(5) and was dischargeable.

The County asserts that since *Marino,* the scope of § 523(a)(5) has been broadened by BAFJA by adding the phrase, "or other court of record" and thus the juvenile court order of September 9, 1984 comes within the category of "or other court of record".

The Debtor asserts that said debt is dischargeable citing the case of *In re Anti-kainen,* 48 B.R. 630 (Bankr.D.Minn.1985), where the Court held that the debtor's obligation to pay her child's full share of social security benefits to a community human services department was dischargeable, on the grounds that the debt was not owed directly to a spouse or to a dependent, nor did the debt to the County arise in connection with a separation agreement, divorce decree or property settlement. It should be carefully noted that the Court expressly held that § 523(a)(5) as amended by BAFJA did *not* apply in that case as the petition was filed prior to the effective date thereof.

The County in reply thereto, pointed out that the District Court in *Marino* did state that the debt to the Department did arise from a "court order", *In re Marino,* 29 B.R. at 801 *supra,* and thus § 523(a)(5) as amended by BAFJA subsequent to *Marino,* which added the phrase, "or other court of record" now brings the juvenile court order versus the Debtor within the purview of § 523(a)(5) as the order of the Lake Superior Court, Juvenile Division, is a Court of Record.

The legislative history as to the intent of Congress in inserting the phrase, "other orders of a court of record" in the 1984 Amendments of BAFJA is sparse at best. There are no Senate or House Reports or legislative statements as to its meaning or purpose. However, Senator Exon made the following statement regarding the Amendment:

> Unfortunately, there is a significant loophole in the current law.
>
> \* \* \* \* \* \*
>
> Unfortunately, however, this section of the Bankruptcy Code makes no provision for child support payments when a child

is born out of wedlock. The amendment I am offering today is identical to S. 2553, a bill which I introduced on April 11. It corrects this inequity by striking the limiting language, "In connection with a separation agreement, divorce decree, or property settlement." Under this revision, the security of support would depend on parentage rather than the marital status of the child's natural parents.

130 Cong.Rec.S. 6094 (May, 1984).

■ Generally, the remarks of one senator are insufficient to establish legislative intent; *See Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982). And statements made in floor debates are less authoritative than committee reports. *United States v. O'Brien,* 391 U.S. 367, 385, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968). Statements made by individual members going to "meaning" of a statutory provision may only reflect the views of the particular speaker. *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). *O'Brien,* however, expressly allows consideration of floor debates. In addition, Senator Hyde's statement was not simply an "isolated remark ... ambiguous in meaning."

■ Senator Hyde does not appear to be "salting the mine" to "create" a legislative history in the record. *See e.g., Regan v. Wald,* 468 U.S. 222, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984). Therefore, Senator Hyde's statement is of some weight. Based on the foregoing remark and the absence of any other legislative history, it appears that at a minimum Congress intended to make judgments by courts of record establishing paternity and support as non-dischargeable in bankruptcy under § 523(a)(5). The question remains as to whether the general phrase, "other order of a court of record" encompasses the order of the juvenile court in this case at bar.

■ The Court should avoid a construction of a statute that renders a portion of the statute superfluous. *Bird v. United*

*States*, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902).

■ Absent a persuasive reason to the contrary, the Court should attribute to the words of a statute their common meaning. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981).

■ In expounding a statute, the Court must not be guided by a simple sentence or a member of a sentence, but look to the provision of the whole law, and to its object and policy. *Offshore Logistics Inc. v. Tallentire*, 477 U.S. 207, 222, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986).

■ In divining the will of Congress, Courts must first refer to the language of the statute itself. Where the language of the statute is on its face clear, it is improper to look beyond it to accompanying legislative history in an effort to divine the intent of Congress or invent ambiguity. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). However, in *United States v. American Trucking Ass'n.*, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345, 1350–1351 (1940), an exception to the "plain meaning" rule was apparently created whereby it was held that if the plain meaning lead to absurd or futile results the Court will look beyond the words to the purpose of the act, and even where the plain meaning did not produce absurd results but merely an unreasonable one, plainly at variance with the policy of the legislation as a whole, the Court has followed the purpose rather than the written words.

In a recent bankruptcy case, the Supreme Court in *Central Trust Co. v. Creditors' Committee (In re Geiger Enter., Inc.)* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1987), the Court quoted *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) as follows:

> It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.

Although the Supreme Court in *Central Trust* held that the language in question was unequivocal and plain, it still consulted the legislative history to support its conclusion.

■ Since all statutory interpretation cases are seeking to find a way to interpret a statute sensibly, and all laws should receive a sensible construction, general terms should be limited in their application so as to not lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. *Hawaii v. Mankichi*, 190 U.S. 197, 213, 23 S.Ct. 787, 789, 47 L.Ed. 1016 (1903).

The United States Supreme Court in *MidAtlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) stated:

> The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.

*Id.* 106 S.Ct. at 760 (*quoting Swarts v. Hammer*, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904)) (Citations omitted).

■ The phrase, "court of record" is not defined in the Code, the Bankruptcy Rules, or discussed in the legislative history. There is no doubt however, that the Lake Superior Court, juvenile division is a "court of record".

The language of § 523(a)(5) is clear and unambiguous. This Court holds that the mere fact that one legislator expressed a concern over filling a gap in the previous legislation regarding paternity judgments is not a sufficient basis to construe the amendment as to "other order of a court of record" as being limited in its application to

only paternity judgments. To do so would produce an unfair and unreasonable result that would be contrary to the avowed over-all policy behind § 523(a)(5), looking at that section as a whole. The phrase "other order of court of record" thus should be construed according to its plain and common meaning. This Court concludes that the phrase "or other order of court of record" would reasonably encompass an order of the juvenile court, and the plain meaning of that phrase would be perverted and unreasonable by any other interpretation, notwithstanding the legislative statement of one Senator, who appeared intent on filling a gap as to paternity judgments. The Court can conceive of no rationale based on logic, experience or policy to hold paternity judgments within the scope of § 523(a)(5), and Court orders such as the one before the Court as not within the scope of that section.

The second issue in determining whether the county's claim is nondischargeable is whether its claim is in the nature of support pursuant to § 523(a)(5).

The Court must look at the policy of the Bankruptcy Code, its predecessor the Bankruptcy Act relating to parental support duties, and the applicable case law in determining the applicability of § 523(a)(5) to the obligation before the Court.

Norton Bankruptcy Law and Practice, provides an informative discussion of the area of the dischargeability of child support and thus to put the matter in proper perspective, the Court will take the liberty of quoting from this treatise at length. Norton states as follows:

> Throughout the history of United States bankruptcy law, family support organizations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was "merely declaratory" of existing law.[1]

The current exception of spousal and child support is found in Code § 523(a)(5).

The duty to support a present or former spouse or child is the principal interest protected by the section.[2] Whether a duty of support exists depends on state law;[3] whether an obligation based on that duty is nondischargeable depends on federal law.[4]

If both the duty to support and the relationship between that duty and the debt whose dischargeability is questioned are clear, few problems are presented. In practice, however, it is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.

The courts have taken different approaches in determining whether the obligation is based on the duty to support or not. The major federal court approach,[5] espoused by Judge Learned Hand, confines the inquiry to whether the obligation arose out of discharges, or in any way expresses, the duty of support. If that question is answered affirmatively, the form of obligation is disregarded and the obligation is excepted from discharge. The second approach,[6] followed by the majority of state courts, focuses on the form of the obligation, as well as on the intent of the parties or of the matrimonial court; occasionally courts following this approach also consider the dependent spouse's need for or use of the payment.

---

[1] *Westmore v. Markoe,* 196 US 68, 49 L.Ed. 390, 25 S.Ct. 172 (1904).

[2] Louiseaux, *Domestic Obligations in Bankruptcy,* 37 Journal Nat Assoc. Ref In Bank 68 at n 16 (July 1963).

The term "support" includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a former spouse, maintenance owed to a legally separate spouse, and support owed to a spouse or child.

[3] Without a state-imposed duty to support another, any obligation purporting to be based on it is dischargeable. *See* § 27.57. Neither

federal statute nor federal common law creates a duty to support another.

4 Application of federal dischargeability standards is illustrated by cases based on Texas law which expressly forbids alimony or support awards to a divorced spouse. A duty that is sufficiently like the support duty has been found for federal dischargeability purposes. See § 27.58. *In re Warner,* 6 BCD 788, 5 BR 434 (BC D Utah, 1980).

5 See § 27.59. [*Citing, In re Adams,* 25 F.2d 640 (2d Cir.1928), where Judge Hand propounded the rule that the underlying duty and not the terms of the obligation controls dischargeability].

6 See § 27.60.

1 Norton Bankruptcy Law and Practice § 27.56, pp. 80–82.

The Courts have consistently held that in the context of a Bankruptcy Discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by Federal Bankruptcy Law and not by state law. *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984); *In re Williams,* 703 F.2d 1055 (8th Cir.1983); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983); *In re Mencer,* 50 B.R. 80 (Bankr.E.D.Ariz. 1985); *In re Seidel,* 48 B.R. 371 (Bankr. C.D.Ill.1984); *In re Yeates,* 44 B.R. 575 (D.C.D.Utah 1984).

 State law, however, should be looked to by the Bankruptcy Court as a criteria in indicating whether a given award is in the nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and thus nondischargeable. *In re Seablom,* 45 B.R. 445 (Bankr.D.N.D.1984); *In re Kagan,* 42 B.R. 563 (Bankr.N.D.Ill. 1984). Thus, the Bankruptcy Court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. *In re Holland,* 48 B.R. 874 (Bankr.N.D.Tex.1984); *In re Vogt,* 14 B.R. 743 (Bankr.E.D.Va.1981). This is particularly true in light of the fact that there is no federal law of alimony and support and all domestic relations law is of state origin. *Matter of Holt,* 40 B.R. 1009 (D.C.S.D.Ga.1984); *In re Bonhomme,* 8 B.R. 645 (Bankr.W.D.Okla.1981).

 The label placed on an obligation by the parties or the Court is not necessar-

ily determinative of its character as nondischargeable alimony, maintenance and support. *Matter of Story,* 36 B.R. 546 (Bankr. M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form or title. *In re Cowley,* 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention.

The Court would also note some basic legal principles that apply to adversary proceedings instituted by a creditor to have a debt determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

 In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Marino,* 29 B.R. 797 *supra; In re Linn,* 38 B.R. 762 (9th Cir. BAP 1984).

 The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman,* 25 B.R. 545 (Bankr.S.D.Cal.1982).

This is done to effectuate the fresh start policies of the Bankruptcy Code. *In re Levitan,* 46 B.R. 380 (Bankr.E.D.N.Y.1985); *In re Nicoll,* 42 B.R. 87 (Bankr.N.D.Ill. 1984).

 Although the nondischargeability provision of the Bankruptcy Code has no provisions allocating the burden of proof brought under it, the creditor must establish that the debt is non-dischargeable. *In re Bowers,* 43 B.R. 333 (Bankr.E.D.Pa. 1984); *Matter of Reinstein,* 32 B.R. 885 (Bankr.E.D.N.Y.1983); *In re Paley,* 8 B.R. 466 (Bankr.E.D.N.Y.1981).

 The creditor objecting to discharge of a debt in Bankruptcy bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Marino,* 29 B.R. 797 at 799, *supra.*

 In the case at bar, the County is asserting its claim against the debtor pursuant to I.C. 31-6-4-18. The Juvenile Court ordered the Debtor to reimburse the

County Department of Public Welfare for the monies it expended for the Debtor's child. The Juvenile Court based its authority to order such payments upon I.C. 31–6–4–18 which provides as follows:

Sec. 18 (a) *The cost of any services ordered by the juvenile court for any child,* or the child's parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 *shall be paid by the county.* The county council shall provide sufficient funds to meet the court's requirements.

(b) *The parent or guardian of the estate of a child* adjudicated a delinquent child or a child in need of services is *financially responsible for any services ordered by the court* unless:

(1) the parent or guardian is unable to pay for them;

(2) payment would force an unreasonable hardship on the family; or

(3) justice would not be served by ordering payment.

\* \* \* \* \* \*

(e) The *juvenile court shall require the parent or guardian of the estate to reimburse the county* in a manner that will cause the least hardship.

(f) *If the parent* or guardian of the estate *defaults in reimbursing the county,* or fails to pay any fee authorized by this article, the *juvenile court* may find the parent or guardian in contempt and may *enter judgment* for the amount due (Emphasis added).

The County asserts that the Debtor's parental duty of support is primarily to the child and that the duty is discharged not by payment directly to the child but by payment to third parties who have furnished services to the child; the child's right to payment is to have the Debtor-parent reimburse the County for monies expended by it for his support and maintenance; and, since the County acted for the child, the monies would be owed by the child, who though is not the payee, is the obligee.

This case is remarkably similar to a recent Colorado decision, in which the bankruptcy court held that Colorado's support statute constituted support within the purview of § 523(a)(5). *In re Huber,* 80 B.R. 531 (Bankr.D.Colo.1987). In *Huber,* the court held the debt owed by the debtor to the county pursuant to an adjudication of dependency and neglect regarding a minor child of the debtors for foster care support fees, arising from placement of debtor's minor child in custody of the court was nondischargeable support obligation pursuant to 11 U.S.C. § 523(a)(5). *Id.* The *Huber* court based its decision on two Colorado statutes. The First, C.R.S. § 19–1–103(24) concerns residual parental rights. It provides:

(24) "Residual parental rights and responsibilities" means those rights and responsibilities remaining with the parent after legal custody, guardianship of the person, or both have been vested in another person, agency, or institution, including, but not necessarily limited to, the responsibility for support....

\* \* \* \* \* \*

The second applicable statute reads:

(d) A decree vesting legal custody of a child or providing for placement of a child pursuant to section 19–2–103, 19–3–101.1, or 19–3–109 with an agency in which public moneys are expended *shall be accompanied by an order of the court which obligates the parent of the child to pay a fee, based on the parent's ability to pay, to cover the costs of the guardian ad litem and of providing for residential care of the child.* When custody of the child is given to the county department of social services, such fee for residential care shall be in accordance with the fee requirements as provided by rule of the department of social services, and such fee shall apply, to the extent unpaid, to the entire period of placement. (Emphasis added).

The *Huber* court stated:

The Debtors argue that the debt must indeed by owed "to" the child not the county otherwise it is dischargeable. Alternatively, the Debtors assert that the debt was somehow "assigned" to the county in contravention of 523(a)(5)(A)

thus making it dischargeable. The Debtors are incorrect on both counts.... debt is predicated on two Colorado statutes. The first, C.R.S. § 19–1–103(24) concerns residual parental rights ...

The second applicable statute reads: ..., C.R.S. § 193–115(4)(d). Pursuant to these statutes, this Court finds that the disputed debt herein is in the nature of child support and as such, is nondischargeable.

This case is remarkably similar to *In re Morris,* 14 B.R. 217 (Bankr.D.Colo.1981) in which then Bankruptcy Judge Moore analyzed an analogous Colorado statute, C.R.S. § 14–10–116(1773) and § 523(a)(5), and determined that payments to a third party which benefited a child were nondischargeable in bankruptcy. Clearly, the Colorado General Assembly has legislated a parental duty to provide for the support of their minor children. A strict reading of § 523(a)(5) as "to whom" payments are made defeats both the state statutes and the intent of the Code because "obligations arising out of the family relationship and the stability generated thereby outweighs the general bankruptcy goal of a fresh start." *Morris,* at 220. *See also, In re Lathouwers,* 54 B.R. 205 (Bankr.D.Colo.1985).

As to the issue of assignment the Debtors' arguments fail on two grounds. First, § 523(a)(5)(A) clearly excepts from its antiassignment language those debts assigned to a political subdivision of the State. The County is certainly such an entity. *See also,* § 101(26). Furthermore, "[t]he Bankruptcy Code, in Section 523 has, by way of the 1984 amendments, made it clear that the policy of nondischargeability as to child support and alimony payments applies whether the claim is held by the former wife [or child] or has been assigned to a governmental unit for collection." *In re Davidson,* 72 B.R. 384, 388–389 (Bankr.D.Colo. 1987). Second, no assignment occurred. The obligation is owed "to" the County and here under the nondischargeability

analysis *supra* the Debtors cannot prevail.

*Id.* at 532–533.

Both the Colorado and the Indiana statutes clearly provide for the payment for the actual costs and expenses incurred in the support of the child by the relevant governmental unit, and are not merely punitive or penal in nature. The statutory fixing of a parents' liability to the governmental unit is premised upon their fundamental legal obligation to provide support for their children. Ind.Code 31–6–4–18 contains this obligation to the parent to pay the actual expenses and costs incurred as to children placed in foster care, because of the failure of the parents to fulfill their legal obligations. Hence, such statute is indeed in the nature of support and therefore nondischargeable.

The County also asserts that the debt to it is not in the nature of an assignment but owed outright to it, but even if found to be an assignment, any debt assigned to a state or political subdivision such as the County is not rendered dischargeable by virtue of any such assignment.

The debt owed to the county is not an assignment. The debt owed is one originally due to the county. Ind.Code 31–6–4–18 requires that the parent pay the county directly and not some other entity to which the debt could be subsequently assigned. Such payments have been held not to be in the nature of an assignment. *In re Huber,* 80 B.R. 531, 533 (Bankr.D.Colo.1987).

Even if the payment to the county was found to be an assignment, it would still not impinge the dischargeability provision of § 523(a)(5). *In re Davidson,* 72 B.R. 384, 388–389 (Bankr.D.Colo.1987). The BAFJA Amendments have clarified that the dischargeability provisions as to child support are not hindered by the fact that the claim has been assigned to a governmental unit. *Id.*

The debtor's obligation owed to the county is thus in the nature of child support and hence the Court finds that such debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).

It is not the manner or form in which the debt is established that determines whether a debt is nondischargeable as support, nor does the fact that the payee of the debt is one other than to whom the duty to support is originally owed necessarily controlling. The labels and titles affixed to the obligation are not controlling. The principal focus of the inquiry is whether the debt is substantively in the nature of a legal support obligation. The obligation in question clearly takes on that characteristic. The juvenile court order did not alter, modify or abrogate the primary and continuing duty to support by the debtor, or the right to support by the child, but merely provided a judicial vehicle by which those rights and duties were enforced through the county. The fact that the county is to be reimbursed for monies expended in fulfilling the debtor's support obligation, rather than the child being named the direct payee does not alter the essence of the debt, i.e. support for the Debtor's child.

As noted by the Court in *In re Morris,* 14 B.R. 217, 219–220 (Bankr. D.Colo.1981), for a debt to be nondischargeable as support it is only necessary that the duty of payment be one which the child is owed and not that the child be the payee-creditor. One may owe a duty of payment to another and yet fulfill that duty by actual payment to a third party. Focusing on the right to payment confuses form over substance. The right to payment is not synonymous with the right to require payment.

It is therefore,

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the Debtor to the county is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

The Clerk shall enter a separate judgment pursuant to Bankr.R. 9021.