**In re Ronald James
REICHUBER Debtor.**

**Doris J. REICHUBER Plaintiff,**

v.

**Ronald James REICHUBER Defendant.**

Bankruptcy No. 86–12735.
Adv. No. 87–0089.
No. 88–1553–C.

United States District Court,
D. Kansas.

Aug. 10, 1989.

Richard D. Ewy, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Dan W. Forker, Jr. of Reynolds, Peirce, Forker, Suter & Myers, Hutchinson, Kan., for defendant.

J. Michael Morris, Wichita, Kan., trustee.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before this court on appeal of the bankruptcy court's memorandum of decision and judgment of decision which were filed on August 25, 1988, in an adversary proceeding. The bankruptcy court therein found, *inter alia*, that certain of debtor's obligations to his former spouse, Doris Reichuber (Doris), under the property settlement are in the nature of property division and, therefore, dischargeable. Doris appeals the decision arguing the debtor's obligation to her under the property settlement, which the parties entered into at the time of their divorce, are in the nature of support, maintenance or alimony so as to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

"The bankruptcy court's findings concerning the nature of the obligation [under 11 U.S.C. § 523(a)(5)] can be set aside, by the district court or the appellate court, only if they are clearly erroneous." *In re Goin*, 808 F.2d 1391, 1393 (10th Cir.1987) (citing *Draper v. Draper*, 790 F.2d 52 (8th Cir.1986)). *See also In re Singer*, 787 F.2d 1033, 1035 (6th Cir.1986). The issue of whether the bankruptcy court applied the correct legal standard in making that determination is freely reviewable on appeal. *See In re Yeates*, 807 F.2d 874, 876–77 (10th Cir.1986).

Appellant does not take exception to the bankruptcy court's findings of fact. The relevant facts indicate that Doris and Ronald Reichuber (Ron) were married immediately after Doris' graduation from high school. Doris and Ron lived on his family farm near Larned, Kansas, and Doris worked as a clerk for a local medical clinic until 1974 when the first of their two children was born. Doris did not work off the farm until Ron petitioned for divorce in August of 1984.

During the divorce proceedings, the parties were initially unable to agree whether the homestead was part of the marital estate for division and unable to value their interests in the homestead for purposes of division. Experiencing financial difficulties, Ron was also attempting to refinance his farming operation at this time. Consequently, plaintiff agreed to receive no maintenance. The parties did arrive, by compromise, at a figure of $69,303.60 which Ron was to pay Doris and which represented Doris' interest in the division of the property. Doris originally intended this payment to be secured by a lien on a certain quarter of land to be awarded to Ron. This arrangement was not carried

out as Ron's refinancing would ultimately leave the payment unsecured. The parties then agreed that Doris would have the right to convert the payment to maintenance.

The pertinent provisions of the settlement agreement state:

IX. *AGREEMENT AS TO MAINTENANCE:* The petitioner, Ronald J. Reichuber, and the Respondent, Doris J. Reichuber, agree that no maintenance shall be awarded' to either party, except only as otherwise provided by this agreement.

. . . .

XVII. *DEFERRED PAYMENTS FOR PART OF RESPONDENT'S SHARE, ACCELERATION:* As part of the property settlement between the parties, Petitioner agrees to pay Respondent Sixty-nine Thousand Three Hundred Three Dollars and Sixty Cents ($69,303.60), as follows:

(1) $7,000.00 of that principal, within one (1) year from and after the date of the Decree of Divorce dissolving the marriage between the parties, and without interest if paid as agreed,

and

(2) The remaining $62,303.60, with interest on the unpaid balance, ... in accordance with the following schedule:

(a) On July 1, 1985, Petitioner shall pay to Respondent the accrued interest on principal of $62,303.60,

(b) On each of the next two (2) anniversaries of that payment date, Petitioner shall credit Respondent with accrued and unpaid interest on all unpaid principal, with such interest then becoming additional principal,

and

(c) Then commencing July 1, 1988, all unpaid principal of Petitioner's obligation under this Article shall then be payable in ten (10) equal annual payments of principal, together with unpaid interest accrued thereon from and after July 1, 1987, with the last annual installment of principal and interest due, if not sooner paid, on July 1, 1997. If petitioner fails to pay any annual installment required by this Article, within sixty (60) days from and after its due date, Respondent shall have the right to accelerate the entire remaining balance of the obligation, making it then due.

To secure his obligations under this Article, Petitioner shall execute a mortgage ... subject to the agreement for its purchase now in escrow with the First National Bank & Trust Co. in Larned ... and also subject to a mortgage Petitioner proposes to execute in favor of the First National Bank & Trust Co. in Larned, in the face amount of $80,000.00,....

XVIII. *CONVERSION TO ALIMONY:* If Petitioner fails to pay any annual installment required by Article XVII of this agreement, within sixty (60) days, from and after the due date of such obligation, respondent shall have the right, in lieu of accelerating the entire remaining balance of that obligation, to convert it to maintenance for herself, due as schedule by Article XVII, but without the right of acceleration based on such default or any later default of that obligation. If Respondent makes that election the principal portion of each annual installment shall increase, concurrently with the exercise of that right, by an amount equal to eight (8) per cent of the principal portion of that annual installment, but without affecting the computation of interest on principal, either the amount of the rate of such interest. Notwithstanding the conversion of such principal portion of the balance of that obligation to maintenance, the security for the payment of it shall remain the same....

Ron did not make the required installment payments; consequently, Doris timely elected to convert the payment to maintenance.

Ron's gross income from 1981 to 1984 had declined from $126,780.00 to $70,165.00. Beginning in January of 1985, plaintiff's monthly take home pay was approximately $630.00. Under the property settlement, Ron received all of the farmland and farm equipment, as well as the

homestead, as his sole and separate property.

Primary residence of the parties' two children was assigned to Doris. After the divorce, Doris and the two children moved from the family home into Larned. Doris testified before the bankruptcy court that her major concern and purpose in agreeing to the property settlement was to have sufficient funds after the divorce to purchase a house in Larned as a residence for her and the children. Without the payments from Ron, Doris has been renting rather than purchasing a house.

▇▇▇ In order to provide a "fresh start," the Bankruptcy Code permits the debtors to discharge most debts with certain exceptions, including debts:

> to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

11 U.S.C. § 523(a)(5). Whether an obligation arising from a divorce settlement is in the nature of support is a determination governed by federal law. *In re Goin*, 808 F.2d at 1392. The labels given by the property settlement to certain obligations created therein are not binding upon the bankruptcy court. *Id.* The determination of dischargeability under § 523(a) requires looking beyond the language of the settlement and first inquiring into the intent of the parties at the time of their settlement. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989); *Goin*, 808 F.2d at 1392. In discerning the nature of the obligation and the intent of the parties, the courts have developed a number of pertinent factors.

(1) The written agreement is "persuasive evidence" of the parties intent if clearly shown by its terms such as where the property settlement and alimony provisions are clearly segregated, *Yeates*, 807 F.2d at 878–79; or where the obligations upon the debtor are expressly imposed as consideration for the other spouse's waiver of support. *Id.; Sylvester*, 865 F.2d at 1166.

(2) If the circumstances indicate the spouse needs support and the agreement explicitly provides for none, then the court may presume the property settlement was intended to be support. *Goin*, 808 F.2d at 1392.

(3) Payments are likely to be in the nature of support if made to the spouse who is maintaining the primary residence of minor children while there is an imbalance of incomes. *Goin*, 808 F.2d at 1392–93.

(4) Direct installment payments to the recipient over a substantial period of time indicate support or maintenance. *Goin*, 808 F.2d at 1393.

(5) If the obligation to pay monthly installments terminates upon the recipient's remarriage or death, support or maintenance is indicated. *Id.*

In applying these factors, the court must constantly focus its efforts upon ascertaining the intent of the parties at the time they entered into the property settlement. *See Yeates*, 807 F.2d at 878–79.

▇▇ In the instant case, the bankruptcy court first identified the *Goin* factors, then noted the importance that the Tenth Circuit in *Yeates* attached to discerning the parties' intent, and finally interpreted that as follows:

> The intent referred to is to provide support or make division of the marital property, not an intent to create a nondischargeable obligation. It is apparent that even if the parties intend to create a nondischargeable obligation, the Court is not bound by that intent if the obligation is not in fact necessary for the support of the nondebtor spouse or their children.

(Dk. # 22 at 9–10). This court agrees with the interpretation stated in the first sentence, but the latter sentence ostensibly introduces a separate evaluation of necessity which has since been rejected by the Tenth Circuit in *Sylvester* 865 F.2d at 1166. Since the bankruptcy court did not rely on this latter analysis in determining whether

the obligation at issue was in the nature of a property settlement, this court finds no error. In fact, the bankruptcy court properly applied each of the *Goin* factors to the evidence.

The settlement agreement segregates the provisions concerning property division and alimony. It reflects the parties' agreement that no maintenance would be awarded each other, except as provided in the settlement. The payment to Doris is explained in the written agreement as being part of the property division or settlement. The payment is secured by mortgages on two parcels of land. While paragraph XVIII does give Doris the right to convert the payment to maintenance for herself, in lieu of the right of acceleration, her right to these payments is still protected by the same mortgages.

Appellant relies heavily on this conversion term as indicating the parties' intent that the obligation would not be extinguished in any bankruptcy action. The bankruptcy court rightly distinguished that intent from one to provide support, and this court agrees that efforts to have a property settlement obligation survive bankruptcy should not be automatically equated with an intent to create an obligation in the nature of support or maintenance. The bankruptcy court found: "The labels, while contradictory in the Settlement Agreement, strongly suggest that the parties arrived at a property settlement and only attempted to protect against the bankruptcy eventuality as an after thought." (Dk. # 22 at 12). This finding has not been shown to be clearly erroneous.

Although circumstances may show that Doris needed support, she expressly agreed to receive none except as otherwise provided in the settlement agreement. On appearance alone, the third factor is satisfied as Doris' gross income was substantially less than Ron's and she maintained the primary residence of their two minor children. The bankruptcy court reasonably inferred that the income imbalance was illusory since Ron was obviously losing money on his farming operation. The children also received reasonable child support un-der the property settlement. The fourth factor also is ostensibly met in that Doris was to receive directly annual installment payments from 1985 to 1997. The fifth factor falls to the side of property settlement since the settlement agreement is silent as to whether the payment would terminate upon Doris' death or remarriage.

Any weight that the above factors carry in showing that Ron's obligation was in the nature of support vanishes when placed beside the testimony of both parties that the payment was calculated from a valuation and division of the marital estate. Both parties agreed, as reflected in the settlement agreement and by their testimony, that the payment represents their efforts to divide equitably their marital property and obligations.

Appellant stresses her testimony that she intended to use the payment to purchase a house comparable to their marital residence in which to live and to raise the minor children. The bankruptcy court recognized that Doris had given such testimony, but it found, nevertheless, that the parties intended the payment to be a property settlement. Ron testified that his payment was intended to be for Doris' division of the marital property and not for her purchase of a replacement home. (Dk. # 28 at 49). The bankruptcy court obviously assessed the conflicting testimony of the parties against the relevant circumstances and found *their* intent was not to create an obligation in lieu of support but, instead, to divide the marital property. This finding has not been shown to be clearly erroneous.

■ Doris' final argument is that the court should place an equitable lien upon the homestead of Ron. The facts of the present case do not fit the equitable lien theory as adopted and explained in *In re Donahue*, 862 F.2d 259, 265–266 (10th Cir. 1988), and *In re Hart*, 50 B.R. 956, 959–60 (Bankr.D.Nev.1985). It is not clear from the property settlement that the source from which the obligation to Doris would be paid or upon which the obligation was thereby secured was the homestead of Ron. *See Donahue*, 862 F.2d at 265; *Hart*, 50

B.R. at 960. Appellant's equitable lien theory is without merit.

IT IS THEREFORE ORDERED that bankruptcy court's memorandum of decision and judgment of decision are affirmed.