In re Earl W. GOSS, SS # 461–64–5623, Debtor.

Mary B. GOSS, Plaintiff,

v.

Earl W. GOSS, Defendant.

Bankruptcy No. 7–90–02167 M A.
Adv. 90–0264 M.

United States Bankruptcy Court,
D. New Mexico.

Aug. 29, 1991.

Elizabeth Losee, Albuquerque, N.M., for plaintiff.

George M. Moore, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for trial on the merits. Plaintiff seeks to have a debt owed to her by the defendant determined to be nondischargeable. Having considered the evidence, arguments of counsel, and the applicable law, the Court finds that the debt is nondischargeable.

## FACTS

After 17 years of marriage, Mary Beth Goss (Mrs. Goss) and Earl Warren Goss (Mr. Goss) were divorced by Decree of Divorce entered August 6, 1980, in the 99th District Court of Lubbock, Texas. At the time of the divorce, Mrs. Goss had no income of her own. Mr. Goss was an attorney. The couple had an epileptic son who was 16 at the time of the divorce and needed daily medication. Mrs. Goss was appointed managing conservator of the child. On August 5, 1980, the parties entered into a Property Settlement Agreement, which was incorporated into the Decree. The Property Settlement Agreement contains a separate section called "Contractual Alimony" which provides:

A. The parties acknowledge that dividing the marital property does not discharge all obligations arising from the marital relationship and that of similar importance are the difference in earning power between Husband and Wife, the possible future needs for support of the parties, fault in breaking up the marriage, the benefits that might have accrued to a party from a continuation of the marriage, and the benefits that may accrue to a party from a dissolution of the marriage. Therefore, in order to discharge completely all obligations arising from the marriage, other than obligations concerning community property, Husband agrees to pay to Wife the following sums as contractual alimony on the terms and conditions stated:

$2,300.00 per month for 180 months ... until either all payments have been made or terminated pursuant to the terms hereof.

In case of Wife's death during the performance of this Agreement, Husband's obligations under this Section shall cease. In case of Husband's death during the performance of this agreement, Husband's obligations under this agreement shall not cease but shall be an obligation of his estate. B. All sums under this Section III are payable solely for Wife's support and shall be reported by Wife in her federal, and state (if applicable) income tax returns for the years of receipt as periodic payments under Section 71 of the Internal Revenue Code of 1954 and under any comparable state law and shall be deducted from income in any federal and state returns of Husband for those years.

Mr. Goss paid a total of $190,300 pursuant to the agreement before he stopped making payments. On his income tax returns Mr. Goss deducted all amounts paid by him to Mrs. Goss. Mrs. Goss reported all amounts received from Mr. Goss as income on all her income tax returns for the years in which the income was received. The amount remaining unpaid pursuant to the agreement is $223,700.

Mr. Goss filed a bankruptcy petition on July 13, 1990. Shortly thereafter, Mrs. Goss filed this complaint to determine the debt nondischargeable under 11 U.S.C. § 523(a)(5). Mr. Goss requested that the Court conduct an evidentiary hearing to consider the changed circumstances of the parties. The Court declined to entertain evidence regarding changed circumstances,

following *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989), which holds that absent a clear congressional mandate, federal courts should not be put in the position of modifying state matrimonial decrees. *Id.*, at 1166.

## DISCUSSION

The Bankruptcy Code provides that alimony, maintenance, or support is not dischargeable.[1]

■■■ The determination of whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law. *In re Goin*, 808 F.2d 1391 (10th Cir.1987). To determine if the obligation is nondischargeable alimony or support or if it is merely designated as such in the document, the initial inquiry must be to determine the intent of the parties at the time they entered into their agreement. *In re Yeates*, 807 F.2d 874 (10th Cir.1986). This determination must be made by looking at the substance of the agreement "viewed in the crucible of surrounding circumstances." *In re Crist*, 632 F.2d 1226 (5th Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981). The Court may admit extrinsic evidence to determine the intent of the parties. *Melichar v. Ost*, 661 F.2d 300 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982).

The first place to look for the parties' intent is in the document itself. Section II of the Property Settlement Agreement is entitled "Division of Assets." It lists the property that the Gosses owned at the time of the divorce and apportions it. Section III of the Property Settlement Agreement is entitled "Contractual Alimony" and deals only with the amount to be paid to Mrs. Goss.

Mr. Goss argued that the contractual alimony was to serve a variety of purposes, all of which have been fulfilled. One was to provide Mrs. Goss with an income after the divorce so that she could acquire a vocation. Since the divorce, she has earned a nursing certificate. Another purpose was to provide support for the child until the child reached the age of majority. Mr. Goss points out that child support is not provided for in the Property Settlement Agreement and that a Texas court would have ordered him to pay a maximum of $1,000 per month for child support. Mr. Goss also argues that some of the $2,300 is attributable to child support and that his son is no longer a minor in need of support. A third purpose of characterizing the payments as alimony was to obtain mutually advantageous tax treatment. At trial, much was made of the fact that Mrs. Goss' attorney, Elgin Conner, was not a divorce attorney but specialized in tax matters.

■■■ Mr. Goss' first two arguments don't go to the Court's inquiry. The time frame relevant to the Court's determination of the parties' intent is the time of the divorce. An inquiry as to whether the circumstances necessitating support have changed is specifically barred by the Tenth Circuit's holding in *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989), and this Court has already ruled that it would not consider evidence regarding changed circumstances. The facts that Mrs. Goss now has a source of income and that the child has reached age 18 are not relevant to this Court's inquiry regarding the need for support at the time of the divorce. These facts actually support the plaintiff's argument that there was a need for support at the time of the divorce. As for Mr. Goss' arguments regarding the mutual tax advantage, the deposition testimony of Elgin

---

1. 11 U.S.C. § 523(a)(5)(B) provides:
   (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
      (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
      (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Conner was that the document was carefully drafted so that a mutual tax advantage would be obtained. The fact that the parties obtained of a mutual tax advantage does not change the reality that Mr. Goss "had the ability to earn substantially more money than [Mrs. Goss] did." Deposition of Elgin Conner, 14. Elgin Conner further testified that

> ... this obligation of $2,300 a month for fifteen years, that was not for property. If you were going to negotiate and come up with a distinction between property and alimony, yes, there's a tax advantage. Certainly if Warren had been obligated to and had paid Mary Beth $2,300 a month for fifteen years and got to deduct that off his income taxes that's an advantage as opposed to having to pay that amount and getting no deduction at all. Vice versa for her. But I would stand on my original statement that this was not for a division of property, that these payments of $2,300 a month did not relate to property.

*Id.* at 15. Although the parties carefully drafted the Property Settlement Agreement so that they could obtain mutually advantageous tax treatment, the evidence showed that there was an underlying need for support.

The fact that relate to the need for support at the time of the divorce are all the Court need concern itself with. The case of *In re Goin,* 808 F.2d 1391 (10th Cir. 1987), lists several factors which are pertinent to the bankruptcy court's determination of whether the debt is support:

> (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of support.

*Id.* at 1392–93. Under each of these factors, the obligation at issue here must be determined to be support. First, the Agreement explicitly acknowledged "the possible future needs for support." Property Settlement Agreement, Section III(A). Second, there was a minor child and an imbalance of income. Third, the payments were made directly to Mrs. Goss and were to be paid in installments over a substantial period of time. Fourth, the obligation was to terminate upon the death of Mrs. Goss. The Court concludes that the obligation is in the nature of support and is therefore nondischargeable.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.